GALVESTON, HARRISBURG & SAN ANTONIO RAILWAY COMPANY v. F. A. PIPER COMPANY.

Decided December 9, 1908.

1.—Common Carriers—Action for Damages—Interstate Transportation—Jurisdiction of State Courts.

A suit against a common carrier for the value of a shipment of freight from a point in this State to a point in another State and which was lost in

transportation, is not founded upon a violation by such carrier of any of the provisions of the Act of Congress of 1887 regulating interstate commerce or any of the amendments to said Act, and hence it cannot be contended that the Circuit and District Courts of the United States have exclusive jurisdiction of such suit.

**2.—Common Carriers—Interstate Shipment—Liability for Loss by Connecting Carrier—Constitutional Law.**

The Federal statute of June 29, 1906, whereby a common carrier in an interstate shipment is made liable for damage to such shipment occurring on the line of a connecting carrier, cannot be held unconstitutional on the ground that it deprives such carrier of its property without due process of law, and deprives them of the freedom of making reasonable and lawful contracts in the management of their business. Said law simply changes the burden of proof from the shipper to the carrier, and provides for an adjustment of the matter among the carriers themselves.

**3.—Trial without Jury—Admission of Improper Evidence—Not Reversible Error, when.**

In the absence of some showing that appellant was injured thereby, the admission of evidence, not the best procurable, in a given case is not reversable error when the trial was before the judge without a jury. Rule applied as to the admission of parol testimony as to the freight rate between two certain points, instead of the printed tariff authorized by the railroad commission.

Appeal from the County Court of Uvalde County. Tried below before Hon. W. D. Love.

*Baker, Botts, Parker & Garwood, James A. Weir* and *John C. Box,* for appellant.—This suit being (except as to the sum of $109.76) without doubt one to recover damages under the Act of Congress of 1887, regulating interstate commerce, and its several amendments, particularly the amendment of June 29, 1906, the County Court of Uvalde County was without jurisdiction of the subject matter of the controversy, because by the express terms of the national law exclusive jurisdiction of the cause of action so created is given to the Interstate Commerce Commission, and the Federal Courts. This court has, therefore, no power to enter any other order or judgment herein, except to revise and dismiss this cause.

That the Federal Courts are given exclusive jurisdiction to try such causes of action, see: Gulf, C. & S. F. Ry. Co. v. Moore, 98 Texas, 302; 24 Stat., 382 (U. S. Comp. Statutes 1901, p. 3159), sec. 9; Sheldon v. Wabash Ry., 105 Fed. Rep., 785; Copp v. Louisville & N. Ry. 43 La. Ann., 513, 26 Am. St. Rep., 199, 12 L. R. A., 726.

That this court will give to the pleadings that construction adopted by the pleader and the trial court: Gulf, C. & S. F. Ry. Co. v. Ramey, 23 S. W., 442; Blum v. Whitworth, 66 Texas, 350; Southern Pac. Ry. v. Kennedy, 9 Texas Civ. App., 232.

The court erred in construing that provision in the Act of Congress wherein it is provided that carriers engaged in interstate commerce can not by contract limit their liability for losses or damage to property being transported from one State to another State, to such loss as occurs on the line of such common carriers, because the effect of the construction so placed upon said Act by the court herein, was to deprive this defendant of its property without due process of law, to deny it the equal protection of the law, and to impair its freedom of

contract. Defendant further says that said provision of said Act is itself invalid in that it attempts to deprive railway companies of the freedom of making reasonable and lawful contracts in the management of their business as common carriers, and because it is an undue and unreasonable restriction upon the freedom of contract, and that said Act is invalid, in that it deprives railway companies which in any manner assist in the carriage of freight from a point in one State to a point in another State, of their property without due process of law; and is therefore violative of the Constitution of the United States. Interstate Commerce Act, 1906, sec. 20, par. 11 and 12; Fifth Amendment, U. S. Constitution; Texas & P. Ry. v. Lynch, 97 Texas, 25; Gulf, C. & S. F. Ry. v. Jackson, 89 S. W., 968; Texas & P. Ry. v. Randle, 44 S. W., 603; Gulf, C. & S. F. Ry. v. Potter, 19 Texas Ct. Rep., 824; Ft. W. & D. C. Ry. v. Williams, 77 Texas, 121; Hutchinson on Carriers (1906), sec. 234; Marshall & Michel Grain Co. v. Kansas City, etc., Ry., 75 S. W., 638; (178 Mo., 480); Western Sash & Door Co. v. Chicago, R. I. & P. Ry., 76 S. W., 998; (177 Mo., 641); Dimmitt v. Kansas City, etc., Ry., 15 S. W., 761; (103 Mo., 40); Nines v. St. Louis, I. M. & S. Ry., 18 S. W., 26; (107 Mo., 475); Missouri, K. & T. Ry. v. McCann, 174 U. S., 580; Cent. Ry. of Ga. v. Murphey, 196 U. S., 194.

The court erred in admitting in evidence, over the objection of defendant, the testimony of the witness Crisp, to the effect that he did not know the legal freight rate on mohair such as is in plaintiff's petition described, shipped from Uvalde, Texas, to Lowell, Massachusetts, at the several times when the shipments in plaintiff's petition mentioned were made, but that he did know that the defendant, the Galveston, Harrisburg & San Antonio Railway Company, usually charged a rate of $1.67 per hundred pounds as the freight rate on said class of freight between said points at said times. Defendant having objected to said testimony, because it was immaterial as to any issue involved in this suit, and because said verbal testimony was incompetent to prove the legal freight rate on said commodity at said times between said points, and because it appears from the testimony of said witness that he did not know the true freight rate between said points, and because said testimony, being verbal statements as to the contents of written or printed documents, was not the best evidence of the contents thereof; and because the schedule of interstate freight rates as required by law to be filed with the Interstate Commerce Commission, or a duly authenticated copy thereof, would be the best evidence as to the legal rate between said points, and because defendant could not be bound by any freight rate other than the legal one. Collins v. Ball., 82 Texas, 267; Williams v. Davis, 56 Texas, 254; Matlock v. Glover, 63 Texas, 235; Allen v. Read, 66 Texas, 19; Sloop v. Wabash Ry. 84 S. W., 111; Griffin v. Wabash Ry., 91 S. W., 1015.

*Martin, Old & Martin,* for appellee.

FLY, ASSOCIATE JUSTICE.—This is a suit instituted by appellee to recover $872.92, the market value of certain mohair delivered at different times in 1906, by appellee to appellant for transportation from

Uvalde, Texas, to Lowell, Massachusetts. Appellant pleaded a contract in which its liability was restricted to its own line. That portion of the answer was excepted to and stricken out as to all shipments made after August 29, 1906, because such a restriction was in violation of a law passed by Congress, which went into effect on that date, and which prohibited carriers from limiting their liability in shipments from one State to another. The cause was tried without a jury and resulted in a judgment in favor of appellee for $822.24.

Through the first assignment of error the contention is made that the Federal Statute of June 29, 1906, is unconstitutional and invalid in that it seeks to deprive common carriers of their property without due process of law, and deprives them of the freedom of making reasonable and lawful contracts in the management of their business. The law referred to is as follows: "That any common carrier, railroad or transportation company receiving property for transportation from a point in one State to a point in another State shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad or transportation company to which such property may be delivered or over whose line or lines such property may pass, and no contract, receipt, rule or regulation shall exempt such common carrier, railroad, or transportation company ·from the liability hereby imposed; provided, that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law." In a succeeding paragraph of the Act provision is made for the recovery by the carrier issuing the receipt or bill of lading of any damages, loss or injury from the carrier on whose line the same may have occurred, that may have been recovered from the first named carrier. U. S. Com. Stats. Supp., 1907, p. 909.

There were eight different shipments of the mohair, all of which, except one made on June 30, 1906, were made subsequent to the passage of the law herein referred to, and each of them contained the following recitals:

"Received by the Galveston, Harrisburg & San Antonio Railway Co. in apparent good order and well conditioned, of F. A. Piper Co., for delivery to the Mass. Mohair Plush Co., at Lowell, Mass., the following articles," a description of the packages of mohair following the recitals. The mohair was delivered to appellant at Uvalde, Texas, and those packages, the value of which is sued for, were never delivered to the consignees in Lowell, Massachusetts.

Before entering into a discussion of the validity of the law of 1906, it becomes necessary to dispose of a question of the jurisdiction of the County Court to try the case in question, which has been raised for the first time through a document filed in this court and labeled "Supplemental Brief for Appellant." The proposition as to jurisdiction is, that this suit being, in the main, one to recover damages under the Act of Congress of 1887, and the amendments thereto, especially the amendment of June 29, 1906, hereinbefore copied, "the County Court of Uvalde County was without jurisdiction of the subject matter in controversy because by the express terms of the national law exclusive

jurisdiction of the cause of action so created is given to the Interstate Commerce Commission, and the Federal Courts."

Section 8 of title 56A, page 3153 of the U. S. Com. Stats. of 1901, being the Act of Congress of February 4, 1887, regulating interstate and foreign commerce, provides: "That in case any common carrier subject to the provisions of this Act shall do, cause to be done, or permit to be done any act, matter, or thing in this Act prohibited or declared to be unlawful, or shall omit to do any act, matter, or thing in this Act required to be done, such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this Act, together with a reasonable counsel or attorney's fee to be fixed by the court in every case of recovery, which attorney's fee shall be taxed and collected as part of the costs in the case."

The suit in the case under consideration is not founded upon any act of commission or omission as to any part of the law of 1887, or any of its amendments, but is a suit for the value of property delivered to a common carrier for transportation from one part of the Union to another, not in the same State, and the amendment of 1906, is only invoked as fixing the extent of the liability of common carriers in interstate shipments. The evident purpose of the section quoted is to give a cause of action for any infraction of the provisions of the Act in question, and has no reference to matters which are neither commanded nor prohibited by its terms. For instance, if, under the amendment of 1906, a common carrier shall refuse to give a receipt or bill of lading and any damage could result therefrom, the section in question would give a right of action for such refusal, but in this suit no effort is made to compel the enforcement of any provision in the Interstate Commerce Act. The section in question has provided for a penalty in case of an infraction of the law of which it is part, in the form of a recovery for attorney's fees, which we think clearly indicates that no actions are referred to except those arising out of an infraction of some provision of the Act, and for which infraction it was desired to impose a fine in the shape of attorney's fees. Such fees are not ordinarily recoverable as damages, and when imposed and allowed it is in pursuance of a design to inflict a punishment for the violation of some law or disregard of some private right. There could be no justification of the infliction of such fine or penalty in cases of the character under consideration, and there is no reason to suppose that such actions were in contemplation when the law of 1887 was enacted. Such being the case, it would follow that there was no intention to interfere with the jurisdiction of State Courts in regard to any subject matter, if it was intended to interfere at all with such jurisdiction, except such as would grow directly out of the failure to obey some injunction laid down in the interstate commerce law. This is apparently the view entertained by the Supreme Court in Gulf, C. & S. F. Ry. v. Moore, 98 Texas, 302; where it is said: "The Act of Congress by its eighth section does give an action for damages for violation of its provisions," and with that proposition holds that the ninth section of the Act confers jurisdiction to try upon the Circuit and District Courts alone. While the latter holding may or may not be correct, it is a matter the

discussion of which can be avoided in this case, because we hold that this suit is not an action for a violation of the provisions of the Interstate Commerce Act. To sustain the contention of appellant would lead to the inevitable result that attorney's fees should be recovered in every case of negligence arising out of an interstate shipment, and only Federal Courts would have jurisdiction, because the Interstate Commerce Law has provided that interstate carriers can not restrict their liability to their own lines. Such a construction of that law would be an absurdity.

If the law against restriction of liability by a carrier in interstate shipments is one that can be rendered available only by litigants in the Federal Courts, then in every case of negligence resulting in damage to property the common carrier would not only be liable for attorney's fees, but under the provisions of section ten of the Act of 1887, would be liable to a fine of $5000. As before stated, if a suit was founded on a refusal to give a receipt, or it may be added if a suit rested on the giving of a receipt with liability restricted therein, the attorney's fees might be recovered, and the fine of $5000 imposed, but the idea can not be entertained that the Congress of the United States intended to provide for the recovery of attorney's fees and the imposition of heavy fines in cases of failure to safely transport property from one part of the Union to another. In this class of cases, at least, it was never intended to confer exclusive jurisdiction on the Circuit and District Courts of the United States.

The first assignment of error, hereinbefore mentioned, can not be sustained. The law of Congress does not in any manner deprive the common carriers of the country of "life, liberty, or property without due process of law." They still have their day in court. The law merely places the shipper in a position where he may be able to recover for damage to or destruction of his property, and relieves him of the often impossible task of locating the active tort feasor among a number of connecting carriers, and places that burden on those in a position of less difficulty in discovering the principal offender. They make their own rules, the property is handled by their cwn employes, and they of all others should know the condition of a shipment when delivered to connecting carriers, and on them is the burden of exposing the active wrongdoer. If it is constitutional to prevent the restriction of liability of a carrier within the borders of the State, and it is well settled that it is, no reason exists for not making the same restriction of liability unlawful in interstate shipments.

The law of Congress does not interfere in any manner with the rights of the State, and solicitude on that ground is needlessly expended. The State of Texas has upon its statute books a law denouncing contracts by common carriers to restrict their liability for property lost or damaged to their own lines, and when it was endeavored to give that law extra-State application the Constitution was promptly invoked to sustain the proposition that the Congress alone had the power to legislate on the subject of interstate commerce. The rights of the Federal government and those of the States seem to be used as buffers to receive the concussion of any legislation intended to regulate the conduct of common carriers. The State says to the carrier "You can not restrict

your liability to your own line within this State" and the Federal government says: "You shall not so restrict your liability when you enter another State." There is no clash between, no interference whatever with, the respective powers of National and State governments. The National government has done what the State government could not do, the State government has done what the National government could not do, and between the two the rights of the citizens of the States, in the matter of restriction of liability, have been protected and conserved. There has been no attempt in the legislation under consideration, to exercise any "extraordinary authority over the natural rights of the citizens," but the law merely seeks to exercise its lawful authority over corporations created by the powers of government, and to protect the rights of the citizen in his dealing with such creatures.

The case of Texas & Pac. Ry. v. Lynch, 97 Texas, 25, invoked by appellant in its attack on the law of Congress, gives no aid to its propositions. It merely holds that articles 331a and 331b, Revised Statutes, apply only to cases of damage to property in course of transportation, the suit being one for injury to a passenger, and then gives the reasons for the passage of the law cited which apply with as much, or more, force to the Federal law. "Before the passage of the Act, it was a matter of not infrequent occurrence that live stock which had been shipped over two or more lines of railroad under separate and independent contracts arrived at their destination in a damaged condition and a shipper was at a loss to know how much of the damage was charged to the one line and how much to the other or others, in case there were more than two. The evident purpose of the Act was to relieve shippers of this difficulty, and to provide a joint action against all the carriers where there was a reasonable probability that each was responsible for some part of the whole damage." If it was found necessary to extend such protection within the bounds of a State, how much more should it be extended when the shipment is to a distant State. The Supreme Court of Texas has declared that there is no presumption that a loss, in an interstate shipment occurred on any but the line of the last connecting carrier, and the unfortunate shipper must go to a distant State to sue the last carrier, or have placed on him the intolerable burden of finding the offending carrier among a series of connecting lines, and the Congress of the United States has relieved the citizen of that burden and placed it on the initial carrier, who is in a better position to detect and run down the offender than the individual can possibly be. The wisdom of the law is fully vindicated in this case where the initial carrier, although the property may have been lost on its line, opens not its mouth, except to attack the laws of the Federal government, and demand proof of its being the offending corporation among the number that handled the goods between Uvalde, Texas, and Lowell, Massachusetts.

The evidence offered as to the customary amount of freight charged by appellant on mohair from Uvalde to Lowell may have been subject to the objection that it was not the best evidence of the freight rate between the two points, but we are unable to ascertain from the record that it injured appellant. Appellee was under no obligation to prove that the freight had not been paid, nor what the freight rate was, but

that was a matter that should have been attended to by appellant. It might be presumed, perhaps, that appellant obeyed the law and customarily charged the amount allowed by the Interstate Commerce Commission, but if such a presumption can not be indulged in, appellant must show that it has been injured by the introduction of illegal evidence before a judge trying a cause, or it will not form ground for reversal. We can not say whether the customary rate proved was greater or less than the schedule fixed by the Commission. As said in International & G. N. Ry. v. Nicholson, 61 Texas, 550, "Here there was no proof whatever as to the amount agreed upon or as to whether or not it had been paid. The bill of lading left the amount blank, showing that no sum had been agreed upon by the parties. What the rate of charge in such cases was lay peculiarly within the knowledge of the defendant, and should have been proved by the company if it had not been proved." The evidence introduced as to the freight rate resounded to the benefit of the appellant and it is in no position to complain of its admission.

No objection has been urged to the recovery on the June shipment of 1906, and we presume appellant is satisfied that it is liable on that shipment, although that is the only one concerning which there is any doubt concerning its liability. The judgment is affirmed.

*Affirmed.*

Writ of error refused.