have known the same and the attendant danger, he assumed the risk, etc. The assignment is overruled.

We have examined all the other assignments presented by appellant in his brief, and find no reversible error in any of them. The judgment of the court below is affirmed.

Affirmed.

EVERTSON v. WARRACH.

(Court of Civil Appeals of Texas. Dec. 5, 1910. Rehearing Denied Dec. 15, 1910.)

1. APPEAL AND ERROR (§ 742*)—ASSIGNMENTS OF ERROR—STATEMENT OF EVIDENCE.

Where, in an action for broker's commissions, appellant claimed by assignment of error that the evidence established that he was the procuring cause of the sale, the assignment required a statement of all the evidence pro and con relating to the question as required by rule 31 (94 Tex. 660, 31 S. W. vii).

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

2. APPEAL AND ERROR (§ 1011*)—FINDINGS OF FACT—REVIEW—CONFLICTING EVIDENCE.

A finding that plaintiff, a real estate broker, was not the procuring cause of a sale, based on conflicting evidence, could not be reviewed on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3983-3989; Dec. Dig. § 1011.*]

3. BROKERS (§ 57*)—COMPENSATION—SERVICES—SUFFICIENCY.

Where a broker procures a prospective lessee for property, and introduces him to the owner, and in the subsequent negotiations between the owner and such prospective lessee a sale of the property is agreed on and carried out, the broker cannot claim commissions on the sale.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 66, 67, 72; Dec. Dig. § 57.*]

4. DEPOSITIONS (§ 101*)—USE BY OPPOSITE PARTY—OBJECTIONS.

Where plaintiff took the deposition of a witness calling by broad interrogatories for a certain statement supposed to have been made by defendant, plaintiff could not object to defendant's introduction of the deposition containing answers, responsive to the interrogatories and unfavorable to plaintiff and corroborative of defendant's evidence, on the ground that they were self-serving declarations.

[Ed. Note.—For other cases, see Depositions, Cent. Dig. §§ 238-240; Dec. Dig. § 101.*]

Appeal from Calhoun County Court; Willett Wilson, Judge.

Action by J. C. Evertson against H. Warrach, Jr. Judgment for defendant, and plaintiff appeals. Affirmed.

J. L. Dupree and Lewis Wood, for appellant. F. W. Burford and Fly & Daniel, for appellee.

REESE, J. J. C. Evertson brings this suit in the county court to recover of H. Warrach, Jr., $375 claimed by him as commissions for making a sale of a certain storehouse and lot belonging to H. Warrach, Jr. It was alleged that Warrach had employed the plaintiff to sell the property, agreeing to give him a commission of 5 per cent. on the price, and that through his instrumentality the property had been sold to one J. H. Wettick for $7,500, whereby defendant had become indebted to him for his commission, amounting to $375. Defendant denied that plaintiff had had anything to do with the sale to Wettick, or that he was entitled to any commission. The case was tried without a jury, resulting in a judgment for defendant, from which the plaintiff prosecutes this appeal.

The trial court found that appellee had employed appellant to sell the property, agreeing to give him 5 per cent. commission, and that he accepted the employment and undertook to find a purchaser. The case turned entirely upon the issue of fact as to whether appellant had procured Wettick as a purchaser of the property, and thereby earned the commission.

The nineteenth and twentieth assignments of error are as follows:

"The uncontroverted evidence in this case being that J. H. Wettick came to Victoria from Kansas on the 4th day of February, 1909, and on the 6th day of February, 1909, began the negotiations with J. C. Evertson for the purchasing of the Levytansky building in the city of Victoria, the same being the property at that time of H. Warrach, Jr., and there being no evidence adduced in the trial that Warrach knew of such a man as J. H. Wettick or that Mullinax knew of the existence of such a man as J. H. Wettick until after said negotiations between Wettick and Evertson had begun and until after Warrach had received notice from J. C. Evertson by the long distance telephone, and that Warrach did not know and did not profess to know what occurred between Evertson and Wettick as to the sale of said property to Wettick, the court erred in not finding from the evidence that J. C. Evertson found the purchaser for said property, to wit, J. H. Wettick, and began the negotiation for the sale of said property at a fixed price, viz., $7,500, and that H. Warrach, Jr., sold said property for said price to the purchaser found and introduced by J. C. Evertson by phone, and erred in not rendering judgment in favor of Evertson for the amount sued for, viz., $375.

"The uncontroverted evidence in this case establishing the fact that J. C. Evertson was the procuring cause of said sale by Warrach to Wettick, and that Warrach sold said property to Wettick at the price fixed by J. C. Evertson, the court erred in not rendering judgment in favor of J. C. Evertson against the defendant Warrach for the reasonable value of J. C. Evertson's services, which under the testimony is established to be 5 per cent. upon the gross amount of said sale."

Under these assignments of error and the

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

propositions thereunder, appellant, after stating very fully the testimony of himself and Wettick, ignores entirely the testimony of appellee, who flatly contradicts both of the said witnesses upon the material points upon which rests appellee's liability, and also the testimony of witnesses who in many important particulars impeached the testimony of Wettick. The assignment certainly demanded a fair statement of all of the evidence on the question presented. Rule 31, 94 Tex. 660, 31 S. W. vii. The uncontroverted testimony shows the employment of appellant to sell the property at an agreed commission of 5 per cent. for $7,500, $1,000 cash, the terms as to the balance to be settled by appellee, and also that the property was afterwards sold by appellee to Wettick for that price. Here the parties split. The testimony of appellant and his witness Wettick fully supports appellant's claim that he was the procuring cause of the sale, that he entered into negotiations with Wettick at Victoria on February 6th and offered him the property for $7,500, that he then called up appellee, who lived at Port Lavaca, over the telephone, and told him he had found a purchaser for the property, and then introduced Wettick, who was in the booth with him, to appellee, who had some conversation with him, in consequence of which Wettick, in company with one Mullinax, who occupied the building as a tenant of appellee and had also been authorized to sell by appellee, went to Port Lavaca the next day, and saw appellee and closed the deal with him for the purchase of the property at the price named. If these facts are true, appellant would be entitled to his commission.

But in most essential particulars this evidence was contradicted by appellee, who testified as follows: "The first I knew of the deal for the Levytansky building was when I received a telephone call from Victoria to me at Port Lavaca, and, when I answered this call, I asked who was talking, and received the reply that it was J. H. Wettick, recently from Kansas, and that he wished to talk to me with reference to securing the lease on my Levytansky building in Victoria. I told him the building was not for lease, that it was already leased to Mr. Mullinax, and that I could not lease it to any one else without his consent. But that if he could make arrangements with Mr. Mullinax, to join him in the lease, and would agree to all of the terms of the Mullinax lease, that I would have no objection to same; and that if he could make such arrangements with Mullinax that they had better run down to Port Lavaca next day and see me about it. That was about all of the conversation over the phone. I did not hear anything with reference to Evertson in the matter until I received the letter from him on February 10, 1909. Next day Mullinax and Wettick came down to see me; said they had practically made arrangements to go into the moving picture business together, and would like to lease the building for two years; that they desired to fix it up very swell, but they would not be justified in the expense, unless they could get a two years lease. I told him the building was for sale, and a long lease might operate against the sale. Wettick then asked me what I would take for the building, and I asked him if he had talked with any of the real estate men in Victoria about it, and he said he had not. I told him, if he had, my price was $8,000, but that, if he had not, my price was $7,500 net to me. That was all that was said relative to the sale of the building at that time. He then asked me if I would consider an additional rental to what I was getting from Mr. Mullinax and let them have it for two years. I told him I would take the matter into consideration and let him know later; that I had to come to Victoria in a few days on some other business, and would see him at that time. That was all that was said relative to leasing the building, and he went to Victoria the following morning. On Tuesday morning, February 9th, Mr. Mullinax rang me up and asked me if I could come to Victoria on that day's afternoon train; that he thought that the young man that was there Sunday with him was in the notion of buying the building from me. I told him I would be up on the afternoon train. I went to Victoria on the afternoon train; got into a hack and went to my building, known as the Levytansky building. Mr. Mullinax met me on the sidewalk, and told me that he felt sure that the young man had decided to buy the building, because he could not get a two years lease on it. I asked the old man if he would agree to release me from our contract, which was the lease he, Mullinax, had for one year. He told me he would, providing that Mr. Wettick would sign a contract that he said he would, giving him a partnership in the moving picture business, which he intended to put in. I also asked him what commission he expected on the building if I sold to Wettick. He, Mullinax, said to me that if I would get the contract that he wanted from Mr. Wettick that he would call it square for any commission he was entitled to in this sale. I then went inside the building, and he said to me that he had about decided to buy the place, and wanted to know what kind of terms I would make. I made him a price of $1,000 cash, balance deferred payments. I told him that I could not sell him the place until Mr. Mullinax gave up his lease, but that Mr. Mullinax would give up his lease if he would go into such contract as Mullinax desired. I then took out my notebook and took down such points as he and Mullinax agreed on in my presence. We crossed the street to the O'Connor building, to a Mr. Koch's office; had the contract drawn up for them, they being present. They both signed the same, took copies, and Mr. Mullinax delivered me

the lease then and there which I had given him. Mr. Wettick and I then went down to Judge Fly's office and drew up a contract for the sale of the building, and he deposited his check for $1,000 in the First National Bank downstairs." He further testified that Mullinax had been authorized to sell the building and he receipted him for his commission in effecting this sale, in consideration of appellee's services in arranging a partnership between Wettick and Mullinax. Appellee testified that he never had any communication with, or from, appellant about the property from the time he was engaged to sell it in July, 1908, until after he had closed the trade with Wettick in February, 1909. The authority to appellant was not exclusive, and left appellee free to make sale by his own efforts.

It is true that appellant was corroborated by Wettick, and the testimony of appellee stands alone, but several witnesses made statements very damaging to the credibility of Wettick, their testimony being as to statements made by him absolutely contradictory of important portions of his testimony. Wettick was so seriously discredited by this impeaching testimony that the trial court, sitting as a jury, would have had a right to discard his testimony. This left the issues of fact to be determined upon the testimony of the two parties to the suit. The trial court seems to have accepted that of appellee as more probably true, or at least to have concluded that appellant had not made out his case by a preponderance of the evidence. In such a case as is here presented this court has no rightful power to revise this conclusion of the trial court upon the facts. The net result of appellee's testimony is that appellant had nothing to do with the sale, that, if he found Wettick, he discovered him only as a prospective renter, and not a purchaser, and if he brought Wettick and appellee together, or was instrumental in doing so, it was not in the capacity of a purchaser, or a person who had any idea of buying, but only as one who desired to lease the building. After the parties came together, appellee as owner and Wettick as a person who desired to lease, negotiations to which appellant was in no sense a party, and to which he had in no way contributed, were entered into between appellee, assisted by Mullinax, and Wettick, resulting in a sale of the property. From a sale thus brought about appellant cannot rightfully claim commissions.

This practically disposes of all of the assignments of error which are so presented as to require consideration. There are a number of such assignments, but they are for the most part improperly grouped, and are not followed by a statement from the record of the matters pertinent thereto, so as to enable us to get any intelligible idea of the questions attempted to be raised. For the most part, even if properly presented, they are answered by what has been said in disposing of the assignments 19 and 20.

Appellant took the deposition of Thad Post in an attempt to prove certain statements supposed to have been made by appellee. The interrogatories called, in the broadest terms, for what appellee may have said in regard to the matter. The answers, strictly in response to the interrogatories, turned out very unsatisfactorily to appellant; in fact, were corroborative of the testimony of appellee. Appellant declined to introduce the depositions, whereupon appellee offered them. Appellant objected to the entire deposition, much of which was absolutely unobjectionable, on the grounds that the answers were not responsive, the testimony not relevant, and that the statements testified to as having been made by appellee were self-serving declarations, etc. The latter is the only objection which need be considered. Appellant, having called, by his interrogatories, for these declarations or statements of appellee, cannot object to them when they turn out to be favorable to his adversary, even though they be of such a character as not to be admissible if offered by appellee in the usual way. Appellant cannot thus speculate on the testimony of the witness, provided the answers be such as are really called for by the interrogatories. This proposition is supported by a syllabus of the opinion in the case of King v. Russell, 40 Tex. 125, but we cannot gather from the opinion itself any support of the syllabus. We assume the reporter found by reference to the record the question really decided.

We find no error in the record, and the judgment is affirmed.

Affirmed.