GALVESTON, H. & S. A. RY. CO. et al. v. YOUNG & WEBB.

(Court of Civil Appeals of Texas. San Antonio. May 22, 1912. Rehearing Denied June 19, 1912.)

1. CARRIERS (§ 219*)—CARRIAGE OF GOODS—INITIAL CARRIER—LIABILITY.

Under Acts 26th Leg. c. 125, permitting a suit against any one or more of the railroads concerned in the transportation, where an intrastate shipment of live stock is sent over two railroads, the initial carrier is liable for all damages incurred, regardless whether on its line or that of a connecting carrier.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 950, 951; Dec. Dig. § 219.*]

2. CARRIERS (§ 228*) — CARRIAGE OF GOODS — CONNECTING CARRIERS—APPORTIONMENT OF LOSS.

Under Acts 26th Leg. c. 125, providing that a suit may be brought against any of the connecting carrying lines where freight has been damaged or lost in its transportation over two or more railroads, and that the damages shall be apportioned among the railroads, the object of the act is to relieve the shipper of the burden of proving the damages accruing on each line; the initial carrier being liable to him for all damages, and the apportionment being necessary only as between the two carriers.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 957–960; Dec. Dig. § 228.*]

3. APPEAL AND ERROR (§ 1002*) — REVIEW — VERDICTS.

Where the evidence, as to a fact, is sharp and conflicting, the question is one for the jury, and its verdict is conclusive on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3935–3937; Dec. Dig. § 1002.*]

4. DEPOSITIONS (§ 104*)—ADMISSIBILITY.

In view of Rev. St. 1895, art. 2288, providing that, when cross-interrogatories have been filed and answered, either party has the right to use the depositions on the trial, a deposition, when used by a party who did not take it, is his evidence just as much as if he had taken it and is subject to all objections.

[Ed. Note.—For other cases, see Depositions, Cent. Dig. §§ 300, 301; Dec. Dig. § 104.*]

5. WITNESSES (§ 395*)—SELF-SERVING DECLARATIONS—ADMISSIBILITY.

In an action against a railroad company for injuries to a shipment of stock, where the plaintiff was impeached by evidence that he had told prospective purchasers that the horses were all right and that he would guarantee them, evidence of his declarations as to the damaged condition of the stock, and what he thought had injured them, are not admissible in corroboration.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 1260; Dec. Dig. § 395.*]

6. EVIDENCE (§ 271*)—DECLARATIONS—SELF-SERVING.

In an action against a railroad company for injuries to a shipment of horses, a witness cannot testify that one of the plaintiffs informed him that the horses were in bad shape.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1068–1079, 1081–1104; Dec. Dig. § 271.*]

7. EVIDENCE (§ 558*) — EXPERT TESTIMONY — IMPEACHMENT—HYPOTHETICAL QUESTIONS.

In an action against a railroad company for injury to a shipment of horses and mules, where a witness had testified that the horses and mules would be in better condition if watered and fed, he could not be impeached by his answer to a hypothetical question, asking his preference as to whether he would rather have the animals shipped directly in a stated number of hours or to have the shipment stopped and the animals watered and fed.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2377, 2379; Dec. Dig. § 558.*]

8. APPEAL AND ERROR (§ 1050*) — REVIEW — HARMLESS ERROR.

In an action against a railroad company for injuries to a shipment of stock, the admission of testimony that the witness purchased the stock after the shipment, and later sold

them at an advance, is harmless, being immaterial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153–4157, 4166; Dec. Dig. § 1050.*]

9. CARRIERS (§ 219*)—CARRIAGE OF STOCK—DUTY OF INITIAL CARRIER.

It is the duty of an initial carrier of live stock to furnish a car reasonably safe and suitable for their transportation.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 950–951; Dec. Dig. § 219.*]

Appeal from Uvalde County Court; T. M. Milam, Judge.

Action by W. L. Young and S. Webb, partners as Young & Webb, against the Galveston, Harrisburg & San Antonio Railway Company and another. From a judgment for plaintiffs, defendants appeal. Reversed and remanded.

Baker, Botts, Parker & Garwood, of Houston, W. B. Teagarden, of San Antonio, and G. B. Fenley and Claude Lawrence, both of Uvalde, for appellants. Martin, Old & Martin, of Uvalde, for appellees.

FLY, J. Appellees sued the Galveston, Harrisburg & San Antonio Railway Company and the Missouri, Kansas & Texas Railway Company of Texas to recover damages to a certain shipment of horses and mules made from Sabinal, Tex., to Sulphur Springs, Tex. The cause was tried by jury and resulted in a verdict and judgment for appellees for $432 against each of the railway companies.

[1] When the live stock were delivered to the initial carrier for shipment, it became liable for all the damages that arose from the negligent transportation of the animals, whether the same occurred on its own line or that of a connecting carrier. This was an intrastate shipment, but the liability of the initial carrier is fixed both by state and federal statutes, and whether intrastate or interstate shipments, the same rule prevails. U. S. Comp. Stats. Supp. 1907, p. 909; Railway v. Lynch, 97 Tex. 25, 75 S. W. 486; Railway v. Piper, 52 Tex. Civ. App. 568, 115 S. W. 107.

[2] In the act of 1899 (Laws of 1899, p. 214) it is provided that in a suit against any of the connecting lines where freight has been damaged or lost in its transportation over two or more railroads, operating any part of the same in Texas, the damages shall be apportioned among the railroads transporting the same; but that act does not place the burden upon the shipper of proving the damages accruing on each line. The very object of the statute was to relieve him of such burden, and at the same time extend to each connecting line of railway the opportunity of locating the line or lines on which the damage occurred. The initial carrier in this case was liable to appellees for the whole of the damages, and the connecting carrier need not have been joined in the suit. When the two railroads were joined, appellees were not thereby compelled to prove the extent of the damages on each line; but, if either or both of the roads desired an apportionment, evidence should have been introduced by them to show where the damages occurred. If a shipper were compelled to prove where the damage occurred, the efficacious relief intended by the act of 1899 would be destroyed. As said by the Supreme Court in the Lynch Case, herein cited: "The evident purpose of the act was to relieve shippers of this difficulty, and to provide a joint action against all the carriers where there was a reasonable probability that each was responsible for some part of the whole damage." The question of apportionment of the damages is therefore one in which the shipper is not interested, and appellants can have no just complaint on that score against appellees. It is a matter to be adjusted between them, and, if it has not been satisfactorily done, they should not complain of appellees, but assail each other. It follows that the charge instructing a verdict for the initial carrier was properly refused, because it was liable to appellees for all the damages, no matter where they occurred. There was evidence, which, if credited by the jury, showed that the animals were injured somewhere between Uvalde and Sulphur Springs.

[3] A number of witnesses for appellants sharply contradicted the only witness, and he one of the appellees, as to the animals being injured, and still the jury returned a verdict for practically all the damages claimed by appellees, thereby placing the seal of their approval upon the evidence of appellee Young. Appellants present no authority that would authorize this court to reject the testimony of Young and credit that of the other witnesses, in the face of the finding of the jury, and we know of none. Appellants admit in their brief that an issue was made as to the condition of the animals when they reached Sulphur Springs, for they say: "The condition of the animals on arrival was a stubbornly contested issue." If so, it was a matter for a jury, because it was purely an issue of fact.

[4, 5] Appellants asked questions of its witnesses Cawthron, Corbin, and Webb as to statements made to them by either of the plaintiffs, and the answers thereto were not placed in evidence by appellants, but, when they were sought to be used by appellees, were objected to as being self-serving declarations. They undoubtedly were self-serving and tended to corroborate the testimony of Young, who alone testified to the injuries to the animals. They were declarations of Young as to the damaged condition of the stock and what he considered had damaged them. The rule is that, without reference

to the fact of who has a deposition taken, it will be considered the evidence of the party who offers it in evidence and is subject to any valid objection by the other party. McCutchen v. Jackson, 40 S. W. 177; Railway v. Ritter, 16 Tex. Civ. App. 482, 41 S. W. 753; Telegraph Co. v. Lovely, 29 Tex. Civ. App. 584, 69 S. W. 128; In re Smith, 34 Minn. 436, 26 N. W. 234; City of Bloomington v. Osterle, 139 Ill. 120, 28 N. E. 1068; Reed v. Holloway, 127 S. W. 1189. The evidence as to the self-serving declarations of Young were made the evidence of appellees when they introduced it and was subject to the objections urged against it. The importance of it was undeniable, the court in the qualification of the bill of exceptions stating that he admitted the declarations "for the purpose of corroborating the testimony of the plaintiff W. L. Young with reference to the condition of the said horses on their arrival at Sulphur Springs, he being the only witness who testified in behalf of the plaintiffs with reference to their condition on their arrival, and which testimony the defendants sought to impeach or contradict as above set out." The only evidence referred to that had any reference to Young was that he had told probable purchasers "that the horses were all right and that he would guarantee them to be all right." The evidence could not be used as corroboration of what Young swore, nor to contradict statements that were attributed to him. The evidence should not have been admitted. A contrary opinion by the Court of Civil Appeals of the First District is in conflict with other Texas authorities on the subject. Evertson v. Warrach, 132 S. W. 514. The decision was not necessary, as it appears that the whole of a deposition was objected to on certain grounds; a large portion not being open to the objections. Evidently authorities on the subject were not brought to the notice of the court, and there was no necessity for any expression of opinion on the subject now under consideration.

Under the terms of article 2288, "when cross-interrogatories have been filed and answered, either party has the right to use the depositions on the trial"; but, when used by either, they are subject to the same objections that are applicable to any other testimony. Whoever introduces the depositions makes them his testimony, whether he took them or not, and a party is not immune from lawful and proper objections to depositions because his opponent had them taken. Such a rule would put the taker of depositions at the mercy of witnesses.

In the case of McCutchen v. Jackson, herein cited, the Court of Civil Appeals of the Second District adopted the following appropriate language from the case of Hatch v. Brown, 63 Me. 416: "When a party uses a deposition taken by his opponent, he makes it his own, and his opponent has the same right of objection to the interrogatories and answers which he would have had if the deposition had been taken by the party offering it, and he is not precluded by the fact that the interrogatories objected to were propounded by himself when the objection was taken."

In the recent case of Reed v. Holloway, 127 S. W. 1189, the Court of Civil Appeals of the Third District held, in regard to a portion of a deposition introduced by the opponent of the taker of it: "The statement was prejudicial to appellant. It appears to have been admitted on the theory that, as this answer in Simpson's deposition was made in reply to an interrogatory propounded to him by appellant, appellant was estopped from objecting to the same when offered on the trial by appellee. Such is not the law." See, also, Wigmore, Ev. §§ 913, 1893; Elliott, Ev. § 1179.

[6] No part of the deposition of Sam Webb, one of the appellees, was offered by appellant, although taken by it; but over the objection of appellants his deposition was introduced, and he was permitted to testify: "Mr. Young told me that the animals were in pretty bad shape when they reached Sulphur Springs, and had their tails and manes chewed badly." That was hearsay of the most objectionable kind, and yet it was admitted; some of the grounds being that Young, the partner of Webb, needed corroboration, and his veracity had been attacked, and the answer of the partner, Webb, was evoked by a question by appellant. There can be no doubt that the answer was improperly admitted and that its admission constituted a material error. No authority, we think, can be found that would justify the admission of that part of the deposition. Appellees made the testimony theirs, and they could not corroborate the testimony of Young, one partner, by testimony of Webb, the other partner, by repeating what Young told him.

[7] Appellees stated to Robert Gafford, a witness, a hypothetical case, as to a car load of horses going through from Sabinal to Sulphur Springs in 28 to 36 hours, without being unloaded, or going 71 miles and being unloaded, fed, and kept for 24 hours, then going 288 miles, and then kept standing on the cars 6 or 7 hours, then unloaded into pens, fed, and watered, and kept in the pens for 8 or 10 hours, then put on the cars and carried a certain distance, then held 7 hours on side track, then carried to destination, then asked the witness which mode of shipment he would prefer, and he answered, "I would rather have the car that went through." He had positively testified that the horses would be in better condition, if delayed and fed and watered, than if they had been hurried through. The testimony as to his preference of the mode of shipment

was improperly admitted, because it had no bearing upon the issues of the case, and he could not be impeached or contradicted by a statement of such preference, and it could have had none but an improper influence.

[8] The pertinency of the testimony of L. F. Bridges that he afterwards sold stock he bought from Young for more than he gave for them is not made to appear, and yet we fail to see how it could have been damaging to appellants.

Without going into details, we are of the opinion that the answers of the witnesses whose rejection is complained of in the thirteenth, fourteenth, sixteenth, seventeenth, and twenty-first assignments should have been permitted to go before the jury. None of the testimony was subject to the objections urged against it. None of the testimony, the rejection of which is assailed in the fifteenth, eighteenth, nineteenth, and twentieth assignments of error, was responsive to the cross-interrogatories, and it was properly rejected.

[9] It was the duty of the initial railroad company to furnish a car that was reasonably safe and suitable for the transportation of the live stock, and the special charge, objected to in the twenty-second assignment, presented the law on that point to the jury. Elliott on Railroads, § 1551. The charge did not require the carriers to be insurers of the live stock.

The grounds of attack on the special charge complained of in the twenty-third assignment of error are without merit; but, in view of another trial, it is suggested that the charge should not be repeated, unless there is more testimony to support it than is found in the present record.

The remaining assignments of error which assail special charges are overruled.

The hypothetical questions complained of in the twenty-eighth and twenty-ninth assignments were not open to the objections urged, and the assignments are overruled.

For the errors indicated, the judgment is reversed, and the cause remanded.