## Pennsylvania Railroad Company v. The John Anda Company, for use, etc.

### Gen. No. 13,010.

1. ESTOPPEL—*when arises to preclude contention that contract is governed by law of Illinois.* Where a party upon the trial of a cause has deliberately contended that he is not liable by virtue of the fact that the contract in question was governed by the law of another state than that of Illinois which will relieve him from liability, he cannot subsequently contend that such contract was governed by the law of Illinois and that in consequence of such law he could not be held.

2. DEPOSITIONS—*party taking, not bound by.* A party taking depositions is not bound by the evidence adduced; he may abandon the same and to an extent use some parts thereof, the other party having the privilege of offering the unused portions, but where such party offers unused portions he is bound with respect

Penn. R. R. Co. v. The John Anda Co.

to his offer by the same rules of evidence which apply to the deposition when offered by the party taking it.

3. BILLS OF LADING—*when limitations contained in, do not affect carrier's liability.* The limitations of a carrier's liability contained in a bill of lading do not, in the absence of proof that such limitations were brought to the attention of the shipper and assented to by him, operate to relieve the carrier of its common law liability to carry and deliver the consigned property to the destination named in the bill of lading. Nor can a carrier limit its common law liability safely to deliver the consigned property at the place of destination by any limitation expressed in its receipt for the property.

4. COMMON CARRIER—*when burden upon, to rebut presumption of negligence.* Where merchandise of a perishable character was delivered to a carrier in apparently good condition, the burden is shifted to it to prove facts exculpating it from the presumption of negligence arising from such merchandise being in a rotten condition shortly thereafter.

5. MARKET VALUE—*when other than that of place of delivery may be taken.* Where a carrier is liable for merchandise undelivered or delivered in an impaired condition, the measure of damages being the market value at the place of delivery at the time when the delivery should have been made, the market value of the nearest point at which there is a market value, less a deduction for freight, may be taken where there was no market value for such merchandise at the place of delivery.

Action in trover. Appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding. Heard in this court at the March term, 1906. Affirmed. Opinion filed February 7, 1907.

**Statement of the Case.** On June 3, 1901, E. E. Hubbard shipped two cars of potatoes from Traverse City, Michigan, to be delivered at Baltimore, Maryland, to John Anda & Co., the consignee. On this consignment two bills of lading were issued by the Pere Marquette Railroad Company. On June 11, 1901, appellee at Chicago notified appellant of a desire to divert the shipment to Williamsport, Pennsylvania. Upon inquiry of appellant the two cars of potatoes were located at Erie, Pennsylvania. Thereupon the two bills of lading issued by the Pere Marquette Railroad Company were surrendered, and appellant in

428    Appellate Courts of Illinois.

Vol. 131]   Penn. R. R. Co. v. The John Anda Co.

their place issued and delivered to appellee two other bills of lading, dated "Chicago, Station, June 11, 1901," acknowledging receipt of cars E. L. 62377 and E. L. 60371, each loaded with 24,000 pounds of pota-toes in apparent good order, consigned to order of John Anda & Co., Williamsport, Pennsylvania, with a memorandum on each to allow inspection and notify O. T. Craven; also the following:

"Conditions,

1. No carrier or party in possession of all or any of the property herein described, shall be liable for any loss thereof or damages thereto, by causes beyond its control; or by fire; or by quarantine; or by riots, strikes or stoppage of labor; or by leakage, breakage, chafing, loss in weight, changes in weather, heat, frost, wet, or decay; or from any cause if it be necessary or is usual to carry such property upon open cars.

Certified: This bill of lading is issued in lieu of a duly stamped memorandum receipt for the same shipment of goods now on file in this company's office."

These are the bills of lading sued on and in evidence.

On the receipt of the bills of lading June 11, 1901, appellee drew a draft on O. T. Craven for $475.63, to the order of the Union Trust Company, and assigned and delivered the two bills of lading as collateral to the Trust Company, which cashed the draft and forwarded it with the bills of lading attached to the West Branch National Bank at Williamsport, Pennsylvania, where it arrived in due time and where it was at the time the potatoes were delivered as hereinafter stated. The two cars of potatoes arrived at Williamsport June 13, 1901. The agent of the appellant had knowledge that the draft and bills of lading were at the West Branch National Bank at Williamsport, but without paying the draft, or taking a surrender of the bills of lading, delivered the two cars of potatoes to O. T. Craven. The claim is made that the potatoes on ar-

rival at Williamsport were found to be rotten, were condemned by the health officers, most of them burned, and those saved sold for less than sufficient to meet the freight charges.

The declaration of three counts was in trover, to which appellant plead the general issue. As no question of moment is raised upon the pleadings, it is unnecessary to state them here in detail. The declaration is sufficient to support the judgment. Errors, if any there are, arose upon the trial of the cause before the court and jury, which resulted in a verdict and judgment in favor of appellee in the sum of $475.63, the amount of the draft, and the cause is before this court for review on an assignment of error that the trial court erred in overruling the appellant's motion for a new trial.

GEORGE WILLARD, for appellant.

WHITMAN & HORNER, for appellee.

MR. JUSTICE HOLDOM delivered the opinion of the court.

It is first objected that the trial court refused to permit Craven to testify on cross-examination that Anda gave him instructions regarding the shipment. This is not well taken, in view of the fact that Anda had parted with his interest in the shipment to the Union Trust Company when he assigned and delivered the bills of lading as collateral security to the draft which the bank cashed, of which appellant had actual knowledge.

The contract of shipment, appellant claims, must be interpreted by the law of this forum, and that section 2, chap. 141, R. S., title "Unclaimed Property," is a complete defense and authority for disposing of the potatoes in the condition its evidence showed them to be on arrival at Williamsport. At the time of issuing the bills of lading in suit the potatoes were at

430    APPELLATE COURTS OF ILLINOIS.

VOL. 131.]    Penn. R. R. Co. v. The John Anda Co.

Erie, Pennsylvania, and if it were material, and we are inclined to the opinion it is not, appellant, by introducing in evidence a decision of the Supreme Court of Pennsylvania, Morrison v. Davis, 20 Pa. St. 171, deliberately invoked the law of that commonwealth by which to interpret and measure its liability, and it cannot be permitted subsequently to change its position by now invoking such protection as the statute of this state might, in a proper case, afford. But it is obvious the Illinois statute can afford no escape from appellant's liability, even if its contract of shipment was to be construed by the law of this state.

A letter of one Parsons, appellant's freight agent at Williamsport, to the West Branch National Bank, formed part of a deposition taken by appellee. On the trial appellee did not read the part of the deposition referring to the letter, or offer the letter itself as evidence. Appellant thereupon offered the omitted portion of the deposition as part of its proof, as also the letter in evidence; the objection of appellee to the letter being sustained, it was excluded. The letter was self-serving, its contents hearsay and inadmissible by either party against objection. But it is insisted that appellee is bound by it because it was brought into the proof by deposition found on file, taken by appellee. This is founded on a misconception of the law. A party taking a deposition may, in his discretion, abandon it on the trial. In this condition the opposing party may use it, if he desires. When he does use it, he is bound by it to the same extent as any other evidence he proffers. It is also subject to the same objections as would be proper if such opposing party had taken the deposition in the first instance on his own behalf; the other party having the same right of objection in every respect, even to the impeachment of the witness. It was so held in McCormick v. Leister, 81 Ill. App. 316, the court saying: "But by introducing the evidence of Schappert—

deposition—appellees made him their own witness, as much so as if they had called him from the bystanders and examined him in person, or as if appellees themselves had first moved in the matter of taking his deposition. So conclusively did this make him the witness of appellants, that after they put in his deposition, appellant might have put in evidence to impeach him.'' Adams v. Russell, 85 Ill. 285.

The limitation of appellant's liability contained in the bills of lading does not, in the absence of proof that such limitation was brought to the attention of the shipper and assented to by him, operate to relieve appellant of its common law liability to carry and deliver the consigned property to the destination named in the bills of lading. Such liability cannot be limited by notice. · Nor can a carrier limit its common law liability safely to deliver the consigned property at the designated place of destination by any limitation expressed in its receipt for the property. The right to make any such limitation in a receipt is prohibited by section 102, chap. 114, and section 1, chap. 27, R. S. Starr & Curtis's ed. It has, however, been held in this state that the carrier's liability by force of the common law may be limited by an express contract. Chicago & North Western Ry. v. Chapman, 133 Ill. 96; Field v. Chicago, R. I. & P. Ry., 71 Ill. 48.

''The rule that a limitation of a carrier's liability for safe carriage and delivery of freight beyond the terminus of the carrier's own line may be made by restrictions contained in that part of the bill of lading which may constitute a contract, has been recognized in this state,'' our Supreme Court said in C. & N. W. Ry. Co. v. Simon, 160 Ill. 648.

There is neither proof or claim that Williamsport, Pennsylvania, is beyond the terminus of appellant. Where, as in the case here under consideration, a contract limiting the carrier's liability is contained in the bills of lading, which in their entirety constitute both a receipt and a contract, the burden of proof is on the

432      APPELLATE COURTS OF ILLINOIS.

VOL. 131.]      Penn. R. R. Co. v. The John Anda Co.

carrier to show that the restrictions of its common law liability were assented to by the consignor. As to this the proof is silent.

The bills of lading recite that the potatoes were in apparent good condition on June 11, 1901, when they were at Erie, two days prior to their arrival at Williamsport. The bills of lading were received in evidence and constituted *prima facie* proof of that fact. This operated to cast the *onus* of proving to the contrary on appellant. It made no attempt to do so.

The hypothetical question was not objectionable as assuming shipment from Traverse City, Michigan. This was a fact undisputed. It certainly was not evidence unfavorable to appellant, for it might—on the conceded fact that the potatoes were old—have introduced evidence tending to prove that such perishable property was liable to spoil on so long a journey, even with the exercise of due care in transportation, taking, as it did, a period of ten days to accomplish. On the contrary appellee proved by expert witnesses that if properly loaded onto the cars, and thereafter hauled and handled with due care, these potatoes would have arrived at Williamsport in marketable condition. With the potatoes acknowledged to be in apparent good order on June 11th, and in appellant's possession at that time, the law made it incumbent upon it to prove facts exculpating it from the presumption of negligence arising from their being in a rotten condition two days thereafter.

The evidence of appellee as to the value of the potatoes on arrival at Williamsport is not subject to the objections made to it by appellant. It was, in all the circumstances of market conditions where quotations prevailed and Williamsport as near a fair calculation as could be devised or expected. There was no market quotation at Williamsport. The nearest market where quotations for potatoes obtained was Pittsburgh. This market price was adopted with an allow-

ance for freight. There is no hard and fast rule of fixing values when applied to property at places lacking market quotations. Any method adopted, which is obviously fair, and which duly conserves the rights and interests of the party sought to be made liable, will satisfy legal requirement.

We have examined with care all the instructions in the record, including those given as well as those refused, and are of the opinion that no substantial error, justifying a reversal, was committed by the trial court in its rulings thereon. The questions of fact were properly submitted to the jury, with principles of law enunciated in the instructions for the guidance of the jury in elucidating the facts and measuring the amount of the damages. The jury were told, in substance, that the measure of damages was the value of the potatoes at the date of their arrival at Williamsport, less the charges of appellant for carrying them, and that appellant was not liable for damages which may have occurred to the potatoes merely by changes in the weather or from decay, providing such decay did not occur by reason of any lack of reasonable care during their transit while in the custody of appellant.

It is true, a misrecitation of a date occurs in one of the instructions given at the instance of appellant through a modification by the court. June 11th was changed to June 2nd. No dispute arose as to these dates, and the jury could not have been misled by the mistake to the disadvantage of appellant. The error was without any prejudicial effect upon the rights of appellant.

It is plain that appellant is in the wrong on every material point of this controversy. It received the potatoes when they were in first-class order, and recited in the bills of lading given that they were in "apparent good condition." With knowledge that the bills of lading were, with a draft drawn by the consignor,

at the West Branch National Bank of Williamsport, and without right or authority, and in the teeth of its duty, both legal and in accord with business custom, it delivered the potatoes to the party upon whom the draft was drawn, without the payment of the draft or the delivery of the bills of lading. Its actions in this regard, and in not safely carrying the goods or offering any legal excuse for not so doing, lost to appellee the value of the property. For this breach of appellant's common law duty it is legally answerable in sufficient damages to make appellee whole from the loss thus occasioned.

We are in accord with the jury's finding of facts and assessment of damages, and in harmony with the rulings of the trial judge upon the law, and the judgment of the Circuit Court will be affirmed.

*Affirmed.*