CHICAGO COLLEGE OF OSTEOPATHY v. LITTLEJOHN.

1. CORPORATIONS—SALE OF PROPERTY BY OFFICER — FRAUD — QUESTION FOR JURY.

In an action for fraud and deceit in the sale of property to plaintiff corporation by defendant, who was a trustee and vice-president of the corporation, for $30,000 more than defendant had agreed to pay the original vendors, whether defendant misrepresented that the price was the lowest at which the property could be purchased and that plaintiff was purchasing direct from the original vendors, *held*, under conflicting testimony, a question for the jury.[1]

2. SAME—FRAUD—EVIDENCE—VALUE OF PROPERTY IMMATERIAL.

In such action, where the only issue was as to whether plaintiff lost $30,000 by reason of the alleged misrepresentations as to the price at which the property could be purchased, and that plaintiff was purchasing direct from the original vendors, the admission of evidence of the value of the property clearly showing that plaintiff had

[1]Corporations, 14a C. J. § 1930.

not suffered a loss, was prejudicial; whether plaintiff made a good bargain being immaterial.[2]

3. Depositions — Defendant Offering Deposition Taken by Plaintiff Makes Witness His Witness.

Where deposition was taken by plaintiff pursuant to 3 Comp. Laws 1915, § 12494 *et seq.*, a part of which was prejudicial to plaintiff and part in contradiction of defendant's testimony, and which plaintiff did not offer in evidence, defendant was at liberty to use it under Circuit Court Rule No. 37, unless it was suppressed by the court, but if he did use it, he made the witness his witness.[3]

4. Witnesses—Depositions—Impeaching Witness—Evidence.

Where plaintiff took the deposition of a witness and offered it in evidence, and afterwards said witness was called by defendant, plaintiff was not entitled to cross-examine him in reference to matters in the deposition, since it could not impeach him in reference thereto, but was entitled to cross-examine him as to all matters testified to in court, which apparently covered all matters relating to the transaction of which the witness had knowledge, and could offer proof to show that statements made by him in such deposition were not true.[4]

5. Corporations—Sale of Property by Officer—Fraud.

Although defendant as trustee and vice-president occupied a relation of trust and confidence to plaintiff corporation, he might purchase property and sell it to plaintiff at an increased price if plaintiff's board of trustees were advised of such fact or should have been advised of such fact by its business manager.[5]

6. Same—Agreement to Conceal Officer's Interest.

If there was an arrangement or understanding between defendant and said business manager whereby he was to conceal from plaintiff the interest of defendant in the property, and the fact that defendant would profit by such sale, such act by the business manager, in presenting the proposition to the board of trustees, would be the act of defendant.[6]

Error to Mecosta; Barton (Joseph), J.   Submitted

[2]Appeal and Error, 4 C. J. § 2953; Corporations, 14a C. J. § 1929; [3]Depositions, 18 C. J. § 342; [4]Id., 18 C. J. § 342 (Anno); [5]Corporations, 14a C. J. §§ 1866, 1882, 1884; [6]Id., 14a C. J. § 1883 (Anno).

October 9, 1925.    (Docket No. 45.)    Decided April 30, 1926.

Case by the Chicago College of Osteopathy against James B. Littlejohn and another for fraud and deceit. Judgment for defendants.    Plaintiff brings error. Reversed.

*Arthur J. Butler (McCormick, Kirkland, Patterson & Fleming,* of counsel), for appellant.

*Penny & Worcester,* for appellees.

SHARPE, J.    The plaintiff is an Illinois corporation, engaged in the conduct and maintenance of an educational institution at Chicago for the teaching of osteopathy, and has a hospital in connection therewith. The defendant James B. Littlejohn, hereinafter called the defendant, is a graduate in medicine and surgery of the University of Glasgow, Scotland.    He came to Chicago in 1896, and, after practicing for four years, during which time he studied osteopathy at Kirksville, in Missouri, he organized the American School of Osteopathic Medicine and Surgery.    The degree of Doctor of Osteopathy was conferred upon him by the Chicago school, and also upon his wife, the defendant Edith Littlejohn.    Both of the defendants taught in this school.    In 1908, its name was changed to Littlejohn College and Hospital.    It was at all times under the control of the defendants and their relatives. It occupied premises at 1422 West Monroe street, the title to which was in the defendants.    In 1913, they entered into an arrangement with another group of the osteopathic profession in Chicago, whereby they united under the name of the plaintiff and rented from defendants the property on Monroe street for its use. The defendant was trustee and vice-president of the plaintiff corporation, and dean of its faculty, from the

time of its organization until about 1920, when he resigned.   He taught in the institution continuously during that time.   He also enjoyed a large private practice in medicine and surgery, supplying a considerable percentage of the patients received at the hospital.

Dr. L. J. Blakeman became a licensed osteopath in 1914, and a Doctor of Medicine and Surgery in 1917. He was a member of plaintiff's faculty in 1917 and 1918, and was associated with the defendants in their private practice, occupying the same offices with them.   Myron W. Bowen was employed by plaintiff as its business manager in the spring of 1917.   He and Dr. Blakeman were friends of many years' standing.

The plaintiff wanted additional room.   Its business manager interested himself to secure it.   The purchase of a property known as the Home for Jewish Friendless and Working Girls was discussed at a meeting of the board of trustees on January 16, 1918. A number of the members of the board, including the defendant, and accompanied by Bowen, visited and inspected the property.   At a later meeting on February 2d, at which the minutes show the defendant was present, Bowen was instructed to enter into a contract for the purchase of this property for $130,000, $5,000 to be paid on the signing of the contract, $15,000 when abstracts of title were approved, and the balance on terms agreed upon.   When the contract and the conveyance which followed were executed, defendants' names appeared as vendors therein.   They had purchased the property from the Jewish Home corporation for $100,000.   Of this plaintiff's board of trustees had no knowledge.

It is defendant's claim that in 1916 there was friction between himself and the faculty of the college, and that he conceived the idea of establishing a

hospital of his own; that he communicated his plans to Dr. Blakeman, and that in January, 1917, they entered into an agreement to purchase, equip and maintain a hospital and clinic in Chicago for their private patients; that their attention was called to the Jewish Home as a building suitable for their requirements; that they inspected it; that he interviewed Mr. Rosenwald, its president, with a view to its purchase, and was told that it was in the hands of Mark Levy & Brother for sale; that he saw these agents, and was informed that the price was $160,000. In further interviews, delayed by the defendant desiring to be assured that they could procure a hospital license, an offer of $125,000 was made by him, conditional on the vendor's taking over defendant's equity in the property then occupied by plaintiff, at $70,000, to apply thereon; that this offer was declined and the suggestion made that the college property be placed in the hands of a broker near it for sale; that defendant interviewed Jackson Brothers, real estate agents, with this in mind; that finally, about January 1, 1918, Levy offered to accept $100,000, and that on January 15th the terms of payment were agreed upon as follows: $5,000 cash, $5,000 upon execution of contract, $10,000 in six months, $50,000 first mortgage, and $30,000 second mortgage; that the execution of a written contract was delayed until February 1st, awaiting the issuance of a hospital license to defendant.

He further claims that Bowen, plaintiff's business manager, upon learning of defendant's proposed purchase and intention to establish a hospital and clinic, urged him not to do so, saying that it would tend to ruin plaintiff's business and be injurious to osteopathy in general; that, after much urging from Bowen and other members of the osteopathic profession, he advised Bowen that he would sell the Jewish Home property to the plaintiff for $130,000, on terms similar

to those in his contract of purchase, with an additional payment of $30,000, and that the proceedings of plaintiff's board on January 16th and February 2d were taken, as he supposed, with full knowledge that the plaintiff was purchasing the property from him. He further claims that he then advised Bowen to have the necessary papers prepared to complete the deal, and that Bowen caused deeds to be executed by the home corporation to defendants and from them to plaintiff, and trust deeds and notes to secure the sums unpaid, and that they were executed and delivered about April 1st.

It is plaintiff's claim that none of its officers, except the defendant and Bowen, had any knowledge that the defendant was interested in the Jewish Home property until after the last of its notes was paid in 1924.

In the meantime, the defendants had removed to Mecosta county, in this State. Plaintiff brings this action in fraud and deceit to recover the $30,000 received by defendant over and above that paid to the Jewish Home corporation. Its motion for a directed verdict, made at the conclusion of the proofs, was denied, and the case submitted to the jury, who found for the defendants. Plaintiff reviews the judgment entered thereon by writ of error.

1. Directed Verdict. The misrepresentations on which plaintiff relies to establish its claim of fraud are:

*First,* That $130,000 was the lowest price at which the property could be purchased, and,

*Second,* That it was purchasing direct from the Jewish Home corporation.

There was no proof that the defendants, or either of them, personally, made any such representations to plaintiff's board of trustees, or to any of its officers. There is proof that at the meeting held on February 2d, at which the board decided to make the purchase,

Bowen either read a letter, or stated its contents, from Jackson to him as business manager, in which a proposition was submitted under which plaintiff might purchase the property for $130,000. The name of the owner was not stated therein. Conceding that the board might assume that it could not be purchased at a lower price, and that the purchase was to be made direct from the Jewish Home corporation, and having in mind the testimony of Jackson that the defendant was present in his office at the time the letter was written, we have the denial of the defendant that he was so present, or that he had any knowledge that such a letter had been written or that Jackson had any authority from him to write it or Bowen to present it. He denies that he was present at any of the meetings of the board when the matter was considered, and states as the reasons for his absence, *first,* that he expected Bowen would place the proposition he had made to him to sell the property to the plaintiff for $130,000 before the board, and he did not want to be present when it was considered, and, *second,* that at the time these meetings were held he was in attendance at the Kent School of Law, in Chicago, in which he was receiving instruction preparatory to being admitted to practice as an attorney. In support of the claim that he was so absent, the records of the law school on those dates were produced and showed his attendance thereat.

It is urged that as defendant accepted the benefit of the transaction entered into, he may not dispute the authority of Bowen and Jackson to act for him. The deal, as finally consummated, was in accordance with the proposition that defendant testified he made to Bowen as business manager of the plaintiff, and he further testified, in effect, that he supposed this proposition was submitted to the board and that their action was founded upon it. While the proceedings sub-

sequent thereto have a bearing on defendant's veracity and the weight to be given to his testimony, we cannot say, considering the entire transaction and all the proof relating to it, that under the undisputed material facts plaintiff was entitled to a directed verdict.

2. Value of the Property.   Error is assigned on the admission of evidence of the value of the property at the time of its purchase by plaintiff and at the time of the trial.   In overruling the objection thereto, the court said:

"My ruling is this: That you have, in general language, in your declaration charged fraud in several ways.   The court holds that the charge of fraud opens a wide door, and wide latitude of inquiry both pro and con; therefore I think that this is within the proper scope of inquiry, and you may proceed."

As already stated, one of the false representations claimed by plaintiff was that defendant, by his agents, Bowen and Jackson, induced plaintiff to pay $130,000 for this property by leading it to believe that this sum was the price asked for it by the Jewish Home corporation, when the plaintiff could at that time have purchased it from the owners for $100,000.   The measure of damages in case the plaintiff recovered was fixed and certain.   The actual market value of the property was not in issue.   Defendants' counsel so concede, but insist that it was admissible "on the question of good faith and whether or not the defendants were guilty of fraudulent conduct."   They quote the rule laid down in 27 C. J. p. 60, and cite the following Michigan cases: *Stone* v. *Covell*, 29 Mich. 359; *Banghart* v. *Hyde*, 94 Mich. 49; *Grabowsky* v. *Baumgart*, 128 Mich. 270; *Aldrich* v. *Scribner*, 146 Mich. 609; *Neal* v. *Neal*, 181 Mich. 114.

In our opinion, these authorities are not applicable to the facts here presented.   Plaintiff was not claiming that it was defrauded by having been induced to

pay a price in excess of the value of the property. It was claiming that, by misrepresentations made to its board of directors, the defendants secured a profit of $30,000 on the purchase of this property by plaintiff and should be required to return that money. That the property was worth more or less than the sum paid was not in issue. Had the plaintiff purchased from the owners, as it claims it could and would have done were it not for the representations made, it would have saved $30,000. Upon that issue, the testimony admitted as to value was in no way material.

The good faith of the defendant was not involved. His relation to the plaintiff was of a fiduciary character. If he was present at the meetings at which the purchase was discussed, and led the board to believe from his silence that its purchase was made direct from the Jewish Home corporation, and that the price asked was that fixed by the corporation, or if Bowen, acting for defendant, so represented, whereas in fact the purchase was being made from him, and, if the plaintiff might at that time have purchased the property for the sum of $100,000, then plaintiff has made out a case under the allegations in its declaration. The defendant denies all the charges on which plaintiff bases its claim of fraud. The issue is clean cut. Whether plaintiff made a good bargain is immaterial. The proof admitted showed very clearly that plaintiff had not suffered a loss. Its effect upon the jury could not but have been prejudicial.

3. *Bowen's Deposition.* Bowen's deposition was taken by plaintiff on October 28, 1924, at Minneapolis, where he then resided. He was examined by plaintiff's counsel, and cross-examined by defendants' counsel. Plaintiff's counsel did not offer it in evidence. After defendants' proof had been submitted, but before they rested, their counsel called the attention of the court to the fact that this deposition had been

taken by plaintiff and that they had not offered it, and requested that they now offer it. Plaintiff's counsel conceded that the defendants might offer the cross-examination, but insisted that, if the examination in chief was read, it must be treated as the testimony of a witness for defendants. The court ruled:

"I think they have a right to insist that the deposition be read, the direct-examination and the cross."

Plaintiff's counsel then asked:

"Do I understand this comes in as a part of the defendants' case?"

To which the court replied:

"No. The direct testimony should be read by plaintiff."

Discussion followed as to whether defendants' request should not have been made before the close of plaintiff's case. The court criticized defendants' counsel for not making the request at that time, but, over objection, required plaintiff's counsel to then read the direct-examination. Error is assigned on this action of the court.

A reading of Bowen's testimony clearly shows that a part of it was prejudicial to plaintiff and a part of it was also in flat contradiction of the testimony of the defendant. The plaintiff did not offer it as a part of its case, and the defendants were averse to putting it in as a part of their proofs.

The deposition was taken pursuant to section 12494 *et seq.*, 3 Comp. Laws 1915. Section 12500 provides:

"Depositions taken under this act may be read and considered in evidence at the trial," etc.

Circuit Court Rule No. 37 reads:

"When a deposition has been taken by either party, it may at any time be read by the other party on the trial." * * *

This rule was referred to with approval in *McDonald v. Smith,* 139 Mich. 211, 220. It was doubtless adopted in view of the holding by Shaw, C. J., in *Dana v. Underwood,* 19 Pick. (Mass.) 99, 104, that a deposition taken by a party who failed to offer it might not be read by the opposite party except by consent.

The plaintiff was under no obligation to offer the deposition as a part of its case. It could not withdraw it from the files. Unless suppressed by the court, the defendants were at liberty to use it. But, if they did, they made the witness their witness. The question is a new one in this State, but many other courts have so held. *Hovey v. Hovey,* 9 Mass. 216; *Hale v. Gibbs,* 43 Iowa, 380; *Morrison v. Insurance Co.,* 59 Wis. 162 (18 N. W. 13); *City of Bloomington v. Osterle,* 139 Ill. 120 (28 N. E. 1068); *McCormick Harvesting Machine Co. v. Laster,* 81 Ill. App. 316; *Pennsylvania R. Co. v. Anda Co.,* 131 Ill. App. 426. See, also, 18 C. J. p. 731, and note to § 342.

4. Right to Cross-Examine. The plaintiff took the deposition of Dr. Blakeman. He was not cross-examined. It was introduced in evidence and read to the jury. At the trial, the doctor was called as a witness by the defendants, and examined at length. On cross-examination, plaintiff's counsel asked:

"At the time of the taking of the deposition, you did not know who got the proceeds of this $30,000, did you?"

On objection, the court held generally that plaintiff "could not cross-examine him in reference to matters in his deposition," but permitted cross-examination as to all matters testified to by him in court. The cross-examination apparently covered all matters relating to the transaction of which the witness had any knowledge. We find no reversible error in the ruling complained of. When the plaintiff offered his deposition, it made him its witness, and under the

familiar rule could not impeach him.    It might, however, and did, offer proof tending to show that some of the statements made by him were not true.

5. Errors in the Charge.    Several errors are assigned on the charge of the court to the jury, and, particularly, on the instructions "that these defendants had the right to purchase the property in question for themselves," and that, even though they found that Bowen acted fraudulently, the defendants were not bound by his conduct "unless they wilfully and intentionally participated therein."

Notwithstanding the fact that the defendant as a trustee of plaintiff occupied a relation of trust and confidence to it, he was at perfect liberty to purchase this property and sell it to plaintiff at an increased price, if plaintiff's board of trustees was advised of the facts, or should have been advised thereof by their business manager, Bowen.    If, however, there was an arrangement or understanding between the defendants and Bowen, whereby he was to conceal from the plaintiff the interest of defendants in the property, and the fact that defendants would make a profit on the sale, then the act of Bowen in presenting the proposition to the trustees would be the act of the defendants.    In view of what has been already said, we apprehend that the trial court will find no difficulty in presenting the claims of the parties, and the rules of law applicable thereto, on a new trial.

The judgment is reversed and set aside, and a new trial granted, with costs to appellant.

Steere, Fellows, Clark, and McDonald, JJ., concurred.    Bird, C. J., and Wiest, J., concurred in the result.

Justice Moore took no part in this decision.