TWIN CITY GAS & OIL COMPANY *v.* BARSTOW.

1. CORPORATIONS—PURCHASE BY PRESIDENT OF REALTY OCCUPIED BY CORPORATION—DISCLOSURE.

The exercise of an option and purchase of property by the president of corporation occupying it under a lease did not constitute a breach of his fiduciary duties, where he made a full disclosure of relevant facts to the stockholders prior to his purchase and no trust resulted in favor of the corporation.

2. SAME—PRESIDENT—PURCHASE OF REAL ESTATE OCCUPIED BY CORPORATION.

It was not a breach of trust for defendant, while president of plaintiff corporation, to lease premises it occupied to it at an increased rent shortly after he had purchased it from the previous owner whose policy of real-estate ownership included recovery of purchase price within 10 years, where it appears defendant fully and fairly disclosed the facts pertaining thereto to plaintiff's directors and stockholders and the terms and rents of the leases were reasonable, fair, not excessive and likely to become as much or more for a shorter term after expiration of option by which the purchase was effected by defendant.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 13 Am Jur, Corporations § 1007.

Appeal from Menominee; Jackson (Glenn W.), J. Submitted January 12, 1956. (Docket No. 30, Calendar No. 46,353.) Decided April 2, 1956.

Bill by Twin City Gas & Oil Company, Inc., a Michigan corporation, against Fred Barstow and Janna Barstow to impress trust on real estate. Bill dismissed. Plaintiff appeals. Affirmed.

*Doyle & Doyle,* for plaintiff.

*Barstow & Barstow,* for defendants.

Dethmers, C. J. Plaintiff seeks a decree to impress a constructive trust in its favor on real estate purchased by and held in the names of defendants, husband and wife. It appeals from decree dismissing its bill of complaint.

Plaintiff's case is predicated on the claim that Fred Barstow, hereinafter called defendant, while president, director and general manager of plaintiff, breached his fiduciary duties by purchasing from plaintiff's lessor the real estate in question occupied by plaintiff for operation of its gasoline and oil business, cancelling the leases running from said lessor to plaintiff and then, as owner, leasing the premises to plaintiff at an increased rent under leases executed by himself as lessor on the one hand and as president of plaintiff lessee on the other.

Proofs accepted as true by the trial court disclose the following pertinent facts. Defendant's father owned the premises and leased them to Shell Oil Company, Inc. In 1943 Shell subleased them for a term of 2 years, with renewal rights for additional 2-year periods, to defendant and Paul T. Maginnis, copartners, doing business as Twin City Oil Company and engaged in operating a gasoline station thereon. The lease was subject to termination by

either party at the end of the first or any subsequent 2-year term upon 30 days' prior notice. In 1944 defendant's father sold the property to Shell, at a price considerably less than the latter considered it worth, on condition that Shell give defendant an option to repurchase at the same price. On April 28, 1944, Shell gave such option to the partnership, granting the right to purchase the premises on or before May 12, 1948, at a price representing the amount Shell had paid defendant's father together with a sum of about $3,500, which appears to have been to cover an indebtedness owing Shell by the partnership, plus interest to date of such purchase on the amount paid by Shell, less a credit, however, for all rent thereafter paid by the partnership to Shell with interest thereon. This arrangement the trial court found to constitute an equitable mortgage. In 1945 the partners took in a third partner and the option was amended to include him. The option was not assignable without Shell's consent and it was to expire May 12, 1948. In January of 1947 Maginnis sold and conveyed to defendant all his interest in the partnership and option and the partnership then dissolved. A month or so later the partnership business was sold, without the option, to one Bruce and associates. The latter operated the business about 2 months and then sold out to plaintiff, which was then in process of being incorporated by defendant. At the outset defendant and friends of his, whom he had interested therein, owned all of the stock of plaintiff. There is no evidence of any transfer of the option rights either to Bruce and associates or by them to plaintiff, nor any to the effect that defendant represented to the incorporators or stockholders of plaintiff that it would own the option. Defendant testified that, despite the language of the option, naming the partners as optionees, it was at all times understood by them and Shell that defendant alone

owned the option rights because of the fact that his father had sold to Shell at a reduced price on the condition that defendant have the option to repurchase at a figure based on the price paid by Shell. The leases appear to have been renewed at 2-year intervals with the result that plaintiff held leases running for 2-year terms beginning February 1, 1947, with renewal and termination rights as above mentioned. The rents called for by the leases totalled $290 per month, but Shell then granted a $100 monthly reduction because of wartime conditions and the adverse effect thereof on petroleum sales. Defendant testified that during a 6-week period commencing the latter part of March, 1948, he discussed with plaintiff's stockholders individually and at 3 or 4 stockholder's meetings the fact that the option which he claimed to own was soon to expire on May 8, 1948; that the leases with Shell had only another year to run; that after the war emergency and expiration of the option it was likely that Shell would fix rentals, in accord with its usual policy, designed to recover its investment in 10 years, and that, even at such advanced rental, plaintiff could scarcely expect security of tenure for more than 1- or 2-year terms; that he told the stockholders that he therefore proposed to exercise the option to purchase and to grant plaintiff a 10-year lease at a rental no greater than that which it could reasonably be anticipated that Shell would demand for a 1- or 2-year term after the expiration of the wartime emergency, the option and the current lease. Thereafter defendant exercised the option, purchased the property, cancelled the Shell leases and, as owner, leased to plaintiff for $412.51 per month. This lease was formally approved at a directors' meeting and defendant testified that he explained it to the stockholders and that there were no objections to his purchase or to the leases and raising of rent on the basis of and for the

reasons above outlined. Defendant financed his purchase by bank loan secured by assignment of his lessor's interest in the new leases, rentals of which will pay the loan in 10 years. There was testimony from which the court could fairly conclude, as it did, that the rent prescribed in the new leases was reasonable and not excessive. In this connection defendant stresses that the so-called rents paid to Shell under the leases did not actually amount to rent, so far as Shell was concerned, but to interest-bearing payments on an equitable mortgage or prospective purchase under the option, and that, for that reason, the prescribed monthly payments were not fixed with regard to what would have represented a fair rental value; that the smaller the payments the larger the balance required under the option, a possible deterrent to the purchase. In June, 1949, after defendant had explained to him how he had acquired title to the property and leased it to plaintiff, Maginnis began to purchase control of plaintiff's stock and, in a relatively short time, all the stockholders at the time of the above-mentioned transactions had sold out to present stockholders. Thereafter, on August 5, 1949, when Maginnis was in control, plaintiff bought a 40% interest in the real estate from defendants and a few months later defendant sold his minority stock interest in plaintiff and severed his connection with it.

While the above version of the facts is not entirely undisputed, it constitutes in substance the one accepted as true by the trial judge and we are not satisfied that, had we been in his position, we would have found otherwise.

If it be claimed that, through the various transactions, the option rights ultimately came to plaintiff, it is to be observed that such claim is not substantiated by the facts as above recited. Bruce testified that he and his associates never acquired the option

and that they did not sell it to plaintiff. There is no proof that plaintiff acquired it from any other source.

Defendant's exercise of the option and purchase of the premises occupied by plaintiff while he was its president and manager were not in breach of his fiduciary duties in view of his full disclosure of relevant facts to plaintiff's stockholders prior to his purchase. Maginnis admitted on the witness stand that in response to his inquiry directed to those who were stockholders at the time of defendant's purchase, they assured him that they had known about and agreed to it. Under such circumstances, defendant's purchase was not a breach of the fiduciary relationship and no trust resulted in favor of plaintiff. *Chicago College of Osteopathy* v. *Littlejohn,* 234 Mich 528.

Was defendant guilty of breach of trust in leasing the premises to plaintiff at an increased rent? We think not, in view of the trial court's finding, supported by the evidence, that defendant fully and fairly disclosed the facts pertaining thereto to plaintiff's directors and stockholders and they agreed to and approved the same. Particularly is the arrangement free from taint when, under such circumstances, the terms and rents of the leases were reasonable, fair, not excessive, and likely to become as much or more for a shorter term, with Shell, after expiration of the option. The trial court so found and we think it in accord with the record.

Affirmed, with costs to defendants.

Sharpe, Smith, Reid, Boyles, Kelly, Carr, and Black, JJ., concurred.