AMERICAN LUMBER & MFG. CO. v. BERTHOLD & JENNINGS LUMBER CO.

(Circuit Court of Appeals, Third Circuit. July 11, 1916.)

No. 2116.

1. DEPOSITIONS ⟨⟨⟩⟩86—ADMISSION IN EVIDENCE—INTRODUCTION.

Where, after defendant read the direct testimony in a deposition of one of its witnesses, plaintiff withdrew the cross-examination, and defendant thereafter read the cross-examination, it thereby made the cross-examination its own testimony.

[Ed. Note.—For other cases, see Depositions, Cent. Dig. §§ 234–236½; Dec. Dig. ⟨⟨⟩⟩86.]

2. SALES ⟨⟨⟩⟩181(5)—CONTRACTS—EVIDENCE.

In assumpsit for a balance due for railroad ties sold and delivered under an express contract, where defendant, claiming that the ties were

not up to specifications, introduced in evidence the result of an inspection by a railroad company which was the ultimate purchaser of the ties, plaintiff is entitled to show that the specifications of the contract between defendant and the railroad company were different from the specifications under which it was furnishing ties, and defendant, having introduced evidence of the inspection, cannot complain of the unfavorable result of such evidence; the court instructing the jury to disregard the existence of the contract between defendant and the railroad company, save in so far as the specifications explain the result of the inspection.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 480; Dec. Dig. ☜ 181(5).]

3. APPEAL AND ERROR ☜1039(13)—REVIEW—HARMLESS ERROR.

In assumpsit for balance due for railroad ties, where plaintiff relied solely on the express contract, the court permitted plaintiff to amend its statement of claim so as to rely on a quantum meruit. Defendant then moved for a continuance, and plaintiff withdrew the amendment; but thereafter evidence of the value of the ties received by defendant was introduced, and the parties contested that issue. *Held* that, as it appeared defendant introduced all evidence applicable to that issue, it could not complain of the action of the court, which, while erroneous, was not prejudicial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4086; Dec. Dig. ☜1039(13).]

In Error to the District Court of the United States for the Western District of Pennsylvania; Charles P. Orr, Judge.

Action by the Berthold & Jennings Lumber Company against the American Lumber & Manufacturing Company. Judgment for plaintiff, and defendant brings error. Affirmed.

R. B. Ivory, Ivory & McKay, and T. M. Gealey, all of Pittsburgh, Pa., for plaintiff in error.

Thomas M. Benner, of Pittsburgh, Pa., for defendant in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

WOOLLEY, Circuit Judge. This action was brought to recover a balance due for railroad ties sold and delivered under an express contract between the parties. The verdict was for the plaintiff (the vendor); the defendant (the vendee) sued out this writ of error.

Of the many errors assigned, only errors of two classes require discussion, though all have received consideration. Errors of one class relate to the materiality of testimony admitted. Those of the other concern the admissibility of testimony under the pleadings.

The contract is found in correspondence of the parties. It involves the sale by the plaintiff to the defendant of many thousand railroad ties to be consigned to the Grand Trunk Railway Company at various points on its line in Canada. The contract prescribes specifications for the ties; the controversy relates to the terms of the specifications.

The specifications first appear in a letter of the defendant directing the plaintiff to ship 15,000 ties of certain dimensions at a named price, and specifying:

---

"The above stock to be a good sound and square-edge grade of yellow pine either long leaf, or close grain short leaf, well manufactured, and free from wane."

These are the contract specifications as claimed by the plaintiff. The defendant admits them to be correct in so far as they go, but maintains that by subsequent correspondence it stipulated that the ties should "show a fair percentage of heart." The difference is in the absence or presence of heart.

The plaintiff delivered and the defendant accepted about 12,000 ties, the greater part of which was rejected by the Grand Trunk Railway Company when the defendant attempted delivery under a contract between it and that company, whereupon the defendant refused payment to the plaintiff.

Before this action was brought, three inspections of the ties had been made at their points of destination. The plaintiff caused one inspection to be made by McNally, its employé, under the above specifications, without any heart. The defendant caused an inspection by Hinkley, its employé, under substantially the same specifications, but calling for a fair percentage of heart. The Grand Trunk Railway Company caused an inspection to be made by one De Cew, upon its own specifications, which had nothing to do with the contract between the parties, and except for certain conduct of the defendant, would have had no bearing upon or relevancy to the matter in controversy.

[1] For compliance with the contract the plaintiff rested its case upon McNally's inspection. For defense the defendant introduced the inspection of its agent Hinkley, but it did not rest its case upon Hinkley's testimony alone. It developed that Hinkley made his inspection for the defendant at the time that De Cew made his inspection for the Grand Trunk. The result of De Cew's inspection was favorable to the defendant. Therefore, instead of relying upon the inspection of Hinkley, the defendant went further and produced De Cew as its witness and made his inspection in part the basis of its rejection of the plaintiff's ties. Although producing De Cew as its witness and desiring his testimony in so far as it related to the inspection and rejection of ties, it is apparent that the defendant was anxious to exclude from the testimony the specifications of the tie contract between it and the Grand Trunk under which De Cew made his inspection. While it is equally clear that the plaintiff was anxious to get those specifications on the record, nevertheless, with one exception, when the court ruled against it, the plaintiff did not attempt to make the contract between the defendant and the Grand Trunk a part of its case in chief. The trouble began when the defendant was presenting its case. Its first witness was its inspector, Hinkley, whose testimony had been taken by deposition. When counsel for the defendant had concluded reading Hinkley's direct testimony, counsel for the plaintiff withdrew the cross-examination. This was disconcerting to counsel for the defendant, for the cross-examination of Hinkley had developed matters to the advantage of the defendant, which he desired on the record. After colloquy between counsel and the court, counsel for the defendant proceeded to read the cross-examination of Hinkley, thereby making Hinkley's

cross-examination the defendant's own testimony.   Magee v. Paul (Tex. Civ. App.) 159 S. W. 325; Herring v. Skaggs, 73 Ala. 446; Citizens' Bank v. Rhutasel, 67 Iowa, 316, 25 N. W. 261; Byers v. Orensstein, 42 Minn. 386, 44 N. W. 129.  He read that which was responsive to the parts of the direct examination which had been admitted, and read and then argued against the admissibility of certain other parts, to which objections had been noted.  The plaintiff claims that in this procedure the defendant itself offered the evidence, to the admissibility of which it now complains by writ of error.  The defendant maintains that the objectionable evidence was read only to obtain the ruling of the court on objections previously noted.  The result is inextricable confusion.  As we read the record, we find that the court was careful to exclude from the testimony the contract and dealings between the Grand Trunk and the defendant until it came to the specifications of the contract under which De Cew had made his inspection.  These the court admitted against the objection of counsel, which we will assume was made in a manner and under circumstances which do not preclude the defendant from asking for a review of the court's ruling.

[2] The ruling of the court raises a question of the materiality of the Grand Trunk specifications to the issue in this case.  As previously stated, there were three inspections.  The first was made by an employé of the plaintiff under given specifications, which did not include heart; the second, by an employé of the defendant under specifications which required a fair percentage of heart.  If the evidence had stopped there, it is obvious that the only questions for the jury would have been which of the two specifications were the specifications of the contract, and whether the plaintiff had furnished ties in conformity therewith.  Specifications of any other contract would not have been material.  But the defendant sought to get the benefit of a third inspection, which, because of the number of ties rejected under it, was advantageous to its defense, and produced the witness De Cew, inspector for neither the plaintiff nor the defendant, but for the Grand Trunk Railway Company, yet opposed the admission of testimony showing under what specifications De Cew made his inspection.  The court, however, admitted the specifications of the contract between the Grand Trunk and the defendant as directly bearing upon the evidentiary value of De Cew's inspection.  These specifications called for

"Long Leaf Yellow Pine Sawn Cross-ties (of like dimensions)—To be Standard Heart, i. e. *All* Heart—with the exception of one inch of sap on each corner of each face—to be cut full size—from live timber, and shipped in 8′ lengths—multiples not accepted—inspection at final destination."

In what way was this testimony material to the issue between the parties?  If the Grand Trunk specifications were the same as the specifications of the contract in suit, as found by the jury, then De Cew's testimony was of value in showing non-performance by the plaintiff, and in being cumulative of the testimony of Hinkley.  If, on the other hand, the specifications under which De Cew made his inspection were different from those which the jury found to be the specifications of the contract between the parties, then De Cew's testimony wholly lost its value as evidence of the plaintiff's non-performance.

As the defendant produced De Cew as its witness and insisted that the standard pursued by De Cew in his inspection was the standard by which the jury should determine the plaintiff's liability, the plaintiff had a right to know and the jury a right to be informed, by what standard De Cew made his inspection. If it happened to be a standard that was a part of the contract between the defendant and the Grand Trunk, that was the defendant's misfortune. When the defendant opened the door to the Grand Trunk transaction and adopted the Grand Trunk inspection as its own, it could not shut the door against evidence of specifications under which that inspection was made. In admitting those specifications it inevitably disclosed the existence of a contract between the defendant and the Grand Trunk which the defendant was trying to fill by purchases from the plaintiff under different specifications. While information to the jury of the existence of the contract between the defendant and the Grand Trunk containing more rigid specifications than those in the contract between the defendant and the plaintiff doubtless produced an atmosphere hurtful to the defendant, yet the defendant itself brought the atmosphere into the case by producing De Cew as its witness, and it risked the injury in order to get the benefit of his testimony. Of this we think the defendant should not complain, especially in view of the caution which the court gave the jury to disregard as immaterial the existence of the contract between the Grand Trunk and the defendant, and to use the evidence respecting the specifications of that contract only to ascertain whether the inspection by the defendant's witness was based upon those specifications or upon the specifications embraced in the contract between the parties.

[3] We shall treat the 7th, 8th, 9th and 16th assignments of error as raising sufficiently another question that calls for a brief examination. In the plaintiff's statement of claim its case is put altogether on the express contract, and is not rested in part on a quantum meruit. If the statement had contained such a count, the American Company's brief concedes that the value of the accepted ties that were under grade would have been a proper subject of inquiry (page 42):

"The issue raised at the trial by the pleadings was performance of the contract by the plaintiff. True, the defendant having unloaded the ties before inspection thereby accepted them, and, had the plaintiff in its replication seen fit to admit that some of the ties were under grade and claimed for them on a quantum meruit, there would then have been two issues of fact to try, namely, how many ties were up to grade, and the value of those under grade. But, the plaintiff having in its replication reiterated that the ties were up to grade, we submit that under the position taken by the plaintiff no evidence of the value of culled ties by it would be competent."

On the third day of the trial the district judge ruled that as a matter of strict pleading the statement should be amended, and granted the necessary permission. When the amendment was offered, however, the American Company pleaded surprise, and asked for a continuance. We infer that the court was disposed to grant the request; whereupon, evidently to prevent the expense and delay of another trial, the plaintiff withdrew the amendment, and the case proceeded, evidence of value being thereafter received. Now, it may be admitted that some con-

fusion and irregularity are apparent on this subject, but upon this record we are not inclined to reverse solely for that reason. We do not reverse except for harmful error, and in what took place below on this subject the American Company suffered no injury. No one can read the notes of trial without being satisfied that the dispute was fought out strenuously on the merits; the trial occupied five days, and the contest was severe as well as prolonged. We can discover no harm done the American Company by this branch of the inquiry, and we would not be justified in sending the case back merely to have the statement amended and the same evidence heard before a second jury. Both parties called witnesses upon this subject of value, and we find no complaint that the American Company was prevented from offering even cumulative evidence that would be available on another trial. In a word, this whole matter has apparently been tried out once on the merits, and, whatever the state of the pleadings may be, we are not inclined to disturb the result. After one fair hearing of a dispute, litigation should ordinarily come to an end.

The judgment below is affirmed.

⬤�longdashFor other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes