## ISLAND DEVELOPMENT CO. et al. v. McGEORGE.

Circuit Court of Appeals, Third Circuit. March 23, 1928.

On Petition for Rehearing, July 9, 1928.

No. 3652.

**1. Ejectment** ⟨key⟩9(3)—**In ejectment, act of partition by Prerogative Court of state of New Jersey held to be certificate of possession, which may be treated as source of plaintiff's title.**

In ejectment, plaintiff *held* not required to trace title back farther than act of partition by Prerogative Court of state of New Jersey, in which land as property of intestate decedent was set off in severalty to plaintiff's predecessor in title, since act of partition was act of possession, which may be treated as source of title.

**2. Ejectment** ⟨key⟩106—**In ejectment, question whether land in controversy was included in survey of West Jersey proprietors to plaintiff's predecessor held for jury.**

In action in ejectment, in which plaintiff claimed paper title originating in survey by West Jersey proprietors to plaintiff's predecessor, question whether lands covered by survey of proprietors included land in question *held* for jury.

**3. Courts** ⟨key⟩376—**Federal court will be slow to displace state rules that tax receipts are inadmissible in ejectment as evidence of title or proof of possession.**

Federal court will be slow to displace, by different federal rules, rules of state court that tax receipts are not admissible in ejectment as evidence of title or possession, since such rules are very close to, if they do not actually constitute, state rules of property.

**4. Ejectment** ⟨key⟩90(1)—**Tax receipts held inadmissible in ejectment where issue of possession had dropped out.**

In action in ejectment in which issue of possession had dropped out, leaving nothing for trial but two paper titles, tax receipts *held* inadmissible, especially where they did not purport to be receipts for taxes assessed against land in dispute.

**5. Ejectment** ⟨key⟩110—**Where plaintiff in ejectment traced paper title to partition proceedings, refusal of charge that deed therein conveyed no title if party whose land was to be partitioned was not owner of land described in commissioners' report held proper.**

In action of ejectment, in which plaintiff traced paper title to partition proceedings, refusal of charge that, if party whose land was sought to be partitioned was not owner of land described in commissioners' report, deed thereunder conveyed no title, and there must be verdict for defendants, *held* proper as framed, where there was issue as to whether land embraced in commissioners' report as land in controversy was land described in petition for partition, in view of use of word "owner" instead of "in possession."

26 F.(2d)—53½

**6. Ejectment** ⟨key⟩9(3)—**In ejectment, plaintiffs paper title must go back without break to some one in possession of locus in quo or to original proprietors.**

In ejectment, plaintiff's paper title must go back without break to some one in possession of locus in quo, as to heirs of decedent whose property had been partitioned, or, failing that, to original proprietors.

**7. Ejectment** ⟨key⟩110—**Where plaintiff in ejectment traced title to partition proceedings, refusal of charge that commissioners did not convey title to land in controversy if land conveyed by sheriff was not land in controversy held proper.**

In action in ejectment, in which plaintiff traced paper title back to partition proceedings, refusal of charge that, if land conveyed in partition was not land in controversy, commissioners, in setting off land in controversy did not convey any title, *held* proper.

**8. Ejectment** ⟨key⟩110—**Where plaintiff claimed paper title to partition proceedings and through them to transfer from original proprietors, charge that failure of any link of title would defeat recovery held error.**

Where plaintiff in ejectment relied on two paper titles, one of which went back to partition proceedings and was included in the other, which began with original proprietors, charge that failure of any link in chain of plaintiff's paper title to include land in question would require verdict for defendants *held* error, since plaintiff could rely on paper title to partition proceedings, notwithstanding failure of link between partition proceedings and transfer from proprietors.

**9. Ejectment** ⟨key⟩106—**Whether plaintiff proved every link in chains of title pleaded held for jury.**

In action in ejectment, in which plaintiff pleaded two chains of title, question whether plaintiff failed in proving every link in both chains was for jury.

**10. Ejectment** ⟨key⟩110—**In ejectment, charge that defendants must recover if there was deed missing in plaintiff's chain of title held properly refused.**

In action in ejectment, charge that there must be verdict for defendants if there was deed missing in plaintiff's chain of title *held* properly refused, since defect of missing deed might conceivably be cured.

**11. Ejectment** ⟨key⟩110—**Where plaintiff in ejectment alleged chain of title to original proprietors, charge that plaintiff should recover if land conveyed by proprietors was land in controversy held erroneous, standing alone.**

In action in ejectment, in which plaintiff claimed title to original propietors, instruction that plaintiff was entitled to verdict if land conveyed by proprietors was land in controversy *held* erroneous, standing alone, as ignoring defense of subsequent infirmity in chain of title.

**12. Ejectment** ⟨key⟩89—**In ejectment, receiving testimony of shacks on premises not part of locus in quo held not error.**

In action in ejectment, in which plaintiff alleged adverse possession, and in which there

was dispute as to location of locus in quo, admission of testimony to existence of shacks on premises not part of locus held, not error.

**13. Ejectment ⊜⊷109—Evidence held not to authorize nonsuit.**

In action in ejectment, in which plaintiff claimed under two chains of paper title, evidence held not to authorize nonsuit, or directed verdict for defendants.

**14. Ejectment ⊜⊷9(2)—Plaintiff in ejectment must show legal title.**

In ejectment, plaintiff, in order to recover, must establish by preponderance of evidence that he has legal title to premises described in complaint.

In Error to the District Court of the United States, for the District of New Jersey; Joseph L. Bodine, Judge.

Action in ejectment by Percy McGeorge against the Island Development Company and another. Judgment for plaintiff, and defendants bring error. Reversed with direction.

Thompson & Hanstein and Walter Hanstein, all of Atlantic City, N. J. (Clarence L. Cole, of Atlantic City, N. J., of counsel), for plaintiffs in error.

William M. Clevenger, of Atlantic City, N. J., and James Mercer Davis, of Camden, N. J., for defendant in error.

Before BUFFINGTON and WOOLLEY, Circuit Judges, and DICKINSON, District Judge.

WOOLLEY, Circuit Judge. The plaintiff had judgment and the defendants sued out this writ of error. As the case must be tried again we shall state the issues in detail and discuss all questions raised by the assignments of error.

Percy McGeorge brought this action of ejectment against the Island Development Company and Altantic Brigantine Bridge Company to recover land known as Boot Island, being one of many islands which form the broken shore line of New Jersey. The tract is meadow land, uncultivated and uninhabited, covered in part by every high tide and completely covered by every storm tide. The land acquired importance enough to bring it into litigation when the defendants constructed across it a boulevard which is the only connecting link between Atlantic City and the city of Brigantine.

Following the habit of ejectment cases, perplexing questions of many kinds arose at the trial and now are here for review. Before approaching their consideration we naturally looked at the law of New Jersey applicable in such actions and then carefully studied the pleadings. In doing so we found that evidently the draftsman of the plaintiff's pleadings had made a like study of the law before stating his client's case. That law is briefly stated in Troth v. Smith, 68 N. J. Law, 36, 52 A. 243, a suit in ejectment on a paper title to land which, as in this case, was wild, unimproved and unoccupied. The court in its opinion first declared familiar law of ejectment, such as, the plaintiff must recover on the strength of his own title, and if the plaintiff fails to establish a good paper title when he relies wholly on such a title, judgment must go against him. The court then said:

"It is equally well settled that the plaintiff must trace his paper title back to some one who is shown to have been in possession of the locus in quo, or failing in that, he must show that his grantor acquired title from the original proprietors."

Many years back in the chain of a paper title on which the plaintiff in that case relied, the land in dispute was a part of a tract which by a decree of a court of competent jurisdiction had been partitioned and assigned to the heirs of one of the plaintiff's predecessors in title. The court, speaking of the partition proceedings, said:

"In the execution of their duty the said commissioners necessarily went upon the said lands and assigned the shares of the several heirs. * * * These partition proceedings were such an open, public declaration of the right to possession by the agents or representatives of the heirs of Jeremiah Leeds (the intestate decedent) as to be tantamount to an occupation by the heirs themselves through whom the plaintiff's paper title is derived, and in our judgment constitutes, prima facie, a valid paper title."

With this law before him, the plaintiff in the instant case filed a narr in ejectment, termed in New Jersey a complaint, and conformably with local practice later filed his "particulars of title" setting forth three claims of title in the nature of as many counts in a narr. As the land of one of his predecessors in title had, as in Troth v. Smith, been partitioned and assigned to his heirs, the plaintiff, following the quoted law that he must trace his paper title back to some one who is shown to have been in possession of the premises in dispute and that such possession may, prima facie, be shown by the possession of the partition commissioners, first drafted a claim of title running back to one William Porch, an intes-

tate decedent, whose property had been partitioned by the Prerogative Court of the state of New Jersey and set off in severalty to one Jacob Porch and thereafter moved from him down to the plaintiff.

Preferring for his own reasons not to rely solely on the paper title thus particularized in the first claim, the plaintiff, still with an eye on the law of Troth v. Smith which says that, failing to trace his paper title back to some one who is shown to have been in possession of the locus in quo, "he must show that his grantor acquired title from the original proprietors," set forth in another claim a paper title originating in a survey by the West Jersey Proprietors to one John Simpson in the year 1741, claiming that the land so surveyed was the island known as Boot Island which includes the land in question. The chain of this paper title purports to run down to the proceedings partitioning the lands of William Porch and through those proceedings to the plaintiff. Thus two paper titles of different lengths were pleaded, the longer embracing the shorter; the shorter possibly being good without the longer, but the longer not being good unless the shorter is good also.

Doubtless for greater assurance, the plaintiff then drew a third claim, not of a paper title but of title by actual, exclusive, continued, uninterrupted, visible, notorious, hostile and adverse possession of the land in question in one John J. Gardner, a predecessor of the plaintiff, for more than twenty years prior to his death in 1921 and like possession in others and finally in himself from that year to the present time.

[1] Thus the plaintiff stated and relied on three distinct titles, that of adverse possession being of course separate from the other two and the other two being separate from each other. For we hold, contrary to the contention of the defendants and in accord with the learned trial court, that it is of no consequence whether the land of William Porch acquired in 1821 and partitioned in 1854 (if it be the land in question) was any part of the original survey to Simpson in 1741 since the act of partition was, as we read Troth v. Smith, an act of possession which (under the first claim) can be treated as a source of title. Having stated three claims of title, the plaintiff might have recovered on any one of them if he had proved the chain of either paper title without a broken link, or failing that, if he had proved possession for a time and of a quality that showed title in him by adverse posses-

sion. When the case came to trial the plaintiff, as he now admits in one of his briefs, did not sustain his claim to title by adverse possession through Gardner, for his evidence of possession did not measure up to the requirements of such a title (Foulke v. Bond, 41 N. J. Law, 545), and therefore that claim finally dropped out of the case, leaving for trial the two paper titles.

[2] The survey to Simpson in 1741 was of an island debatably uncertain as to location, sketchy as to dimensions, yet with its shape shown by an accompanying map. The core of the controversy (tried as a unit when we think it should have been tried by keeping the two paper titles clear and distinct in the minds of the jury) was what lands were covered by the survey of the proprietors and assigned to Simpson, whether an island named Weak Fish Island or Boot Island, the island in question. That was an issue of fact for the jury—an issue of location and identification—with which this court, of course, has nothing to do. We are however concerned with the manner in which the trial court submitted that issue: At the threshold of its charge it tersely stated the issue as follows:

"If it was Weak Fish Island, the plaintiff is not entitled to a verdict. If it was Boot Island, the plaintiff is entitled to a verdict."

From this statement of the issues we turn to a discussion of the errors which it is alleged the court committed in the trial, not as specified by the twenty-six assignments of error, some of which overlap, but as stated and numbered in the brief of the plaintiff in error.

[3, 4] 1. Whether It Was Error to Admit in Evidence Certain Tax Receipts.

At the trial the plaintiff offered in evidence thirty-four tax receipts issued to him by the tax collector for Galloway township bearing dates from 1889 to 1924, inclusive. The defendant objected to the offer on the ground that payment of taxes cannot support an action in ejectment. The learned trial court agreed that they were not admissible on the question of title but, thinking them admissible "on the question of constructive or actual possession," asked counsel for the plaintiff if the offer was made for that purpose. They first answered that the receipts were offered for both purposes, and finally said:

"We are not offering them under the adverse possession, but on the ground that we had color of title."

The court admitted the tax receipts, yet

when it came to the charge it very properly instructed the jury that there was no proof that any one was in possession of the property and was silent with respect to the tax receipts. And so in this situation where there was no proof of adverse possession by Gardner and his successors under the plaintiff's claim of title by adverse possession and no proof (or occasion under the paper titles for proof) of possession of any other kind by the plaintiff, the tax receipts remained in the case. That they were not admissible as evidence of title is clearly established by decisions of the Supreme Court and the Court of Errors and Appeals of New Jersey in Troth v. Smith, 68 N. J. Law, 36, 38, 52 A. 243, and Parrot v. Nugent, 91 N. J. Law, 302, 305, 102 A. 899. That they were not admissible in proof of possession was also decided in Parrot v. Nugent, supra. As these are state rules of evidence announced by high courts of a state (Erie Railroad Co. v. Hilt, 247 U. S. 97, 38 S. Ct. 435, 62 L. Ed. 1003) in respect to real property within its borders and are very close to, if they do not actually constitute, state rules of property, we shall be slow to displace them by different federal rules. Fletcher v. Fuller, 120 U. S. 534, 555, 7 S. Ct. 667, 30 L. Ed. 759; Pennsylvania Co., etc., v. Philadelphia Inquirer Co., 25 F.(2d) 701. But aside from these rules affecting real property, we think the tax receipts were peculiarly inadmissible in this case because the issue of possession had dropped out, leaving nothing for trial but two paper titles. Moreover, the tax receipts in question do not purport to be receipts for taxes assessed against the land in dispute; some refer to property "known as Prince George Meadows" and others refer to no property at all.

We are constrained to find that the admission of the tax receipts was prejudicial error.

[5, 6] 2. Whether the Court Erred in Refusing to Charge the Defendants Fourteenth Request and in Charging as Follows:

"Although the plaintiff must trace, for this kind of land, his title back to the proprietors, if partition proceedings were taken, then partition proceedings being such an open and public declaration of the right to possession by the agents or representatives of the owners as to be tantamount to an occupation by them, that partition proceeding, coupled with the paper title to be derived therefrom, is sufficient to constitute a prima facie title."

The fourteenth request was:

"If the jury find that William Porch, whose land was sought to be partitioned, was not the owner of the land described in the report by the commissioners, the deed to Jacob Porch thereunder conveyed no title to the land in question, and there must be a verdict for the defendants."

The trouble which the parties have had with these instructions, given and refused, evidently arose from their failure constantly to keep in view the two counts on different paper titles. The instruction given was right because it bears on one alternative of the law of Troth v. Smith as we read it. The instruction refused should have been given because it too bears on the same alternative and also on the other—a paper title must go back without a break to some one in possession of the locus in quo, that is, to the heirs of a decedent whose property has been partitioned, or, failing that, to the original proprietors. The instruction given and the instruction asked and refused applied alike to the first claim setting up a paper title originating in William Porch and the proceeding under which his land was partitioned. To show title in Jacob Porch, an heir and recipient of a portion of the land partitioned, it became necessary to show title in William Porch, his ancestor, for manifestly if William Porch whose land was sought to be partitioned did not own the land described in the commissioners' report and actually partitioned and conveyed to Jacob Porch, the deed to Jacob conveyed nothing. State v. Judges, etc., 5 N. J. Law, page 555. The decree must conform to the pleadings, for it is impossible that a decree in partition should rise any higher than the petition on which it is based, and validly convey something the decedent did not have. If the commissioners did not partition the land of William Porch, which was a link in both of the plaintiff's chains of title, or if they partitioned land other than that which William Porch owned and set off the land here in question to Jacob Porch, there was a break in the chains of both paper titles that would defeat the plaintiff. There was therefore a clear issue whether the land embraced in the commissioners' report as Boot Island and in the court's order of partition was the land described in the petition for partition. An examination of the description of the land in the petition compared with a description of the land partitioned by the order creates a doubt as to whether they were the same land. The de-

fendants said it was not, and this constituted their main defense on the first claim of title with the short chain and one of their defenses on the last claim of title with the long chain. That defense was available and validly made. Grassman v. Badgley, 90 N. J. Eq. 207, 106 A. 373; section 27 of the Act of 1846, Nixon's Digest (2d Ed.) p. 572. It then became a question for the jury whether the land described in the petition was Boot Island, and we rather think the court submitted that question, yet it did it in a way that makes us doubt that the jury caught the instruction as clearly as they would if it had been given in the form of the fourteenth request. We hold the defendants were entitled to that instruction.

[7] 3. Whether the Court Erred in Refusing to Charge the Defendants' Eleventh Request.

The request was:

"If the jury believe that the island conveyed by John Baxter, sheriff, to William Porch, is not the island referred to as Boot Island, the commissioners in setting off said Boot Island to Jacob Porch did not convey any title to him in said Boot Island."

This is the fourteenth request particularized. We think the request should have been charged for it bears on the issue of identification of the locus in quo in an intermediate link of the title with the long chain and in the first link of the title with the short chain. In the long chain title the paramount question was the location of the island which under the proprietors' survey in 1741 was assigned to Simpson, the first link in that paper title. The defendants contended that that island was just below the mouth of Absecon Creek, that it probably was Weak Fish Island, but that in any event it was not what is now commonly known as Boot Island lying about two miles away. The plaintiff contended it was Boot Island, the island of the locus in quo. Here again was the old question of location and identification, this time of the island itself, and it was a proper question, we think, to be submitted to the jury because until Boot Island is located the locus in quo on Boot Island cannot be located under either paper title.

4. Whether It Was Error Not to Have Charged the Thirteenth Request.

Not pressed.

[8-10] 5. Whether It Was Error Not to Have Charged Defendants' Fourth and Twelfth Requests.

The fourth request was:

"If any link in the chain of plaintiff's paper title fails to include the land in question there must be a verdict for the defendants."

The twelfth request was:

"If the jury find that there is a link missing in the chain of plaintiff's title, that is a deed missing, then there must be a verdict for the defendants."

We think the fourth request was charged in substance and therein we find error because in charging the substance of that request the distinction between the two paper titles pleaded and relied on was not noted and the fact made clear that if a link in the plaintiff's paper title with the long chain had failed, which link was before the plaintiff's title with the short chain had begun with William Porch and the partition proceedings, it would not have deprived the plaintiff from relying on, and succeeding on, the paper title with the short chain. On the other hand, if a link had failed in the short chain, it being a part of the long chain, then, manifestly, the plaintiff would have failed on both. Whether the plaintiff failed in proving every link in both chains was a matter exclusively for the jury. The twelfth request was properly refused, for the defect of a missing deed might, conceivably, be cured. We think, speaking generally, the fourth request as framed was properly refused but as modified in the manner we have suggested it should be charged at the next trial. Speaking particularly with respect to a claimed break in a chain of title by the use of the certified copy of an ancient deed instead of by the ancient deed itself and the effect of a recital in the sheriff's deed, we hold under the circumstances of this case against the defendants.

[11] 6. Whether the Court Erroneously Charged the Jury as Follows:

"So your first problem is what island was conveyed by this warrant and survey in 1741 to John Simpson. If it was Weak Fish Island, plaintiff is not entitled to a verdict; if it was Boot Island, plaintiff is entitled to a verdict."

This instruction, standing alone, was bad under both paper titles of long and short chains for it in effect withdrew from the jury's consideration every issue under both titles other than the initial issue of identity of the island which the proprietors surveyed to Simpson; in other words, the instruction, if it had stopped there, ignored the defense of infirmity in both titles at and immediately before the partition proceedings which were intermediate the title with the long

chain and the beginning of the title with the short chain. But later in its charge the court properly instructed the jury with reference to the partition proceedings as a source of title (without distinguishing between the two titles) but we gravely doubt whether the jury, after the first bold instruction had found lodgment in their minds, regarded the later instruction as qualifying or distinguishing the former. While the two instructions when read together and understood may not involve technical error, we fear the jury may have wandered. Charging the jury in this case was, because of its peculiar nature, exceptionally difficult. We are satisfied the trouble will not recur.

[12] 7. Whether the Court Erroneously Permitted the Witness Gardner to Testify to the Existence of Shacks on Premises No Part of the Locus.

A witness, having testified that she had sailed around Boot Island a number of times, was asked whether any persons were occupying a part of the island at the toe of the boot. The defendants objected on the ground that the locus in quo is no part of the toe of the boot. The plaintiff maintained that under its claim of adverse possession through Gardner the property covered this part of the island, and was allowed the question. The witness answered: "I know there were some shacks." In view of the dispute as to the location of the locus in quo running through the case and in view also of the character of the island, as well as the plaintiff's right to prove title by adverse possession if he could, we find no error in admitting this testimony.

[13] 8. Whether the Court Should Have Nonsuited the Plaintiff or Directed a Verdict for the Defendants.

It should not.

[14] 9. Whether the Court Erred in Refusing to Charge the Defendants' Second Request:

The request was:

"In order for the plaintiff to recover a verdict he must establish by the preponderance of the evidence that he has legal title to the premises described in the complaint."

The defendants were entitled to the request in its form or in its substance. They had it in substance; it might have been well to charge it in form.

10. Whether the Court Erred in Refusing to Charge the Defendants' Sixth Request.

The request was:

"In determining whether plaintiff has established his title by the clear weight of the evidence the jury may not consider any documents except those directly granting the premises in question."

This request was predicated on the admission in evidence of certain alleged muniments of title, such as mortgages, assignments of mortgages, brief of title, etc., bearing, as we understand the matter, on the plaintiff's claimed possessory title. Whether this evidence properly or erroneously remained in the case or whether it prejudiced the jury against the defendants ceases to be of importance in view of the impending reversal of the judgment. Whether these instruments if offered at the next trial should be admitted or excluded is of course a matter on which this court, not knowing what will be the evidence at the next trial, cannot forecast an opinion.

The judgment is reversed with direction that the defendants be awarded a new trial in accordance with this opinion.

## On Petition for Rehearing.

There is one thing that is perfectly clear in this confused case. It is that the defendant in error, by his petition for rehearing, has shown that this court, by its opinion, added to the confusion on one point. The trouble arose out of an expression used generally by the plaintiffs in error and loosely by us when referring to William Porch as "the owner" of the land in question and when applying New Jersey law to the paper title of the short chain.

The New Jersey law, as we have seen, provides that when, as here, a plaintiff relies on a paper title, he must, in one alternative, "trace his paper title back to some one who is shown to have been *in possession* of the locus in quo." Further, the law says that the start of such a title may validly be partition proceedings which it regards as "such an open, public declaration of the right to possession by the agents or representatives of the heirs of [the intestate decedent] as to be tantamount to an occupation by the heirs themselves through whom the plaintiff's paper title is derived and * * * constitutes, prima facie, a valid paper title." In this case the intestate decedent was William Porch. The heir or distributee by partition was Jacob Porch. Of course Jacob Porch did not come into possession until after partition had been made; or, if otherwise, his possession was solely by virtue of the possession of William Porch, his ancestor. There was not time enough after the death of William Porch for an adverse possession by Jacob Porch, and no claim of title in him

by such possession is made. The partitioners were in possession by virtue of the proceedings and their possession was that of William Porch (or, it may be, of his heirs through him) whose property they were partitioning. Therefore the genesis of the paper title of the short chain must have been the possession by William Porch. This is the "possession" by "some one" of which in such a case the court spoke in Troth v. Smith, supra.

The plaintiff, however, maintains (and we fear the language of our opinion intimates) that such possession means ownership and that ownership can be derived only from some one with an antecedent paper title to the premises. This, we think, is not the law. William Porch may have "owned" the land by virtue of his 33 years' possession, if adverse, etc. Anyway, tracing the title back to "some one * * * in possession of the locus in quo," not to some one with a paper title to the locus in quo, is the New Jersey rule. William Porch may have been such a person and, if so, his possession is a valid start of the paper title of the short chain, leaving for the jury of course the question whether the particular land partitioned to Jacob Porch, through whom the plaintiff claims a paper title, was land of which William Porch had been possessed. It therefore becomes necessary to alter certain unfortunate expressions in our opinion. This we do as follows:

Under the numerical heading 2, we hold the defendant's fourteenth request as framed was properly refused. It may however be charged if the words "the owner" be deleted and the words "in possession" inserted. To carry on the same thought it will be necessary farther down to substitute the word "possession" for the word "title" as it appears in the sentence "necessary to show title in William Porch, the ancestor," his possession being provable by the partition proceedings, and also to strike out the words "own" and "owned" and substitute the words "possess" and "possessed." It follows (3) that the eleventh request as framed was properly refused, but may be charged if expressly limited in its application to the paper title of the long chain.

While we have hastened to cure this infirmity in our opinion which the defendant in error very properly pointed out, we have found nothing else in his petition which calls for correction or which has disturbed our judgment. Therefore the petition for rehearing is denied.