## DE SOTO MOTOR CORPORATION v. STEWART.

## SAME v. EPPERSON.

### Nos. 686, 687.

Circuit Court of Appeals, Tenth Circuit.

Dec. 6, 1932.

Rehearing Denied Feb. 8, 1933.

son's, was going to Albuquerque that night on business of his own, and might go with them. Briggs then invited Stewart. A Mrs. Vann completed the party on the ill-fated trip, made in the company car. The theory upon which the judgments are founded is that Briggs was on company business in demonstrating the car to Epperson; and that Stewart was a part of the public whose good will appellant was desirous of gaining.

Appellant contends that the New Mexico death statute violates the equal protection clause of the Federal Constitution (Amend. 14), a corresponding section of the State Constitution (art. 2, § 18) and also section 26, art. 4, of the New Mexico Constitution, which prohibits the granting of special privilege to corporations. The pertinent sections of the New Mexico death statute, sections 36-102 and 36-104, Comp. St. 1929, are set out in full in Mallory v. Pioneer Southwestern Stages (C. C. A. 10) 54 F.(2d) 559. Ever since the enactment of the original statute in 1882 (Laws N. M. 1882, c. 61), distinctions have been made in the statute between deaths occasioned by the negligence of common carriers, and deaths occasioned by the negligence of others. One of the distinctions is as to the amount of recovery. In the original statute, recovery against common carriers for wrongful death was fixed at $5,000 irrespective of the actual loss; against others, recovery was limited to the actual damage, not to exceed $5,000. In 1891 (Laws N. M. 1891, c. 49), the $5,000 limit was removed as to the latter class. Since 1891, therefore, recovery may be had against others than common carriers for the full amount of the damage occasioned by the wrongful death; while $5,000 [now $7,500 (Laws 1931, c. 19)], no more and no less, is recoverable where death is occasioned by a common carrier (Comp. St. N. M. 1929, § 36-101). The judgments in these cases exceed $5,000. The claim is that such statute denies to appellant, not a common carrier, the equal protection of the laws.

George S. Downer, of Albuquerque, N. M. (J. O. Seth, of Santa Fé, N. M., on the brief), for appellant.

Francis E. Wood, of Albuquerque, N. M. (O. N. Marron and Owen B. Marron, both of Albuquerque, N. M., on the brief), for appellees.

Before COTTERAL, PHILLIPS, and McDERMOTT, Circuit Judges.

McDERMOTT, Circuit Judge.

Judgments were rendered, after verdicts of a jury, against appellant for damages arising from the death of Mr. Stewart and Mr. Epperson. They were killed when an automobile in which they were riding, alleged to have been driven by one Briggs, failed to negotiate a curve at high speed. Briggs was a traveling representative of appellant; his general duties were to promote its business in New Mexico, and he was particularly charged with the duty of selling the demonstrating car in his custody. Briggs was endeavoring to interest Epperson in its purchase. On the night of the accident, Briggs was required to go from Gallup to Albuquerque on company business. He invited Mr. Epperson to go; Epperson in turn suggested that Mr. Stewart, a friend of Epper-

■ This statute has stood without challenge for more than 40 years. It was copied from a Missouri statute passed in 1855. The presumption of constitutionality that is accorded all legislative enactments is greatly strengthened by public acquiescence over a long period of time. Commonwealth v. Kneeland, 20 Pick. (Mass.) 217; Stumpf v. Storz, 156 Mich. 228, 120 N. W. 618, 23 L. R. A. (N. S.) 152, 132 Am. St. Rep. 521; George Gregory Printing Co. v. De Voney, 257 Ill. 399, 100 N. E. 1066; Udell v. Citi-

916

zens' St. R. Co., 152 Ind. 507, 52 N. E. 799, 802, 71 Am. St. Rep. 336; Beasley v. Ridout, 94 Md. 641, 52 A. 61; State v. Omaechevviaria, 27 Idaho, 797, 152 P. 280; Home Telephone Co. v. People's T. & T. Co., 125 Tenn. 270, 141 S. W. 845, 43 L. R. A. (N. S.) 550; State ex rel. Proctor v. Bay City, 65 Or. 124, 131 P. 1038; Gilmore v. Penobscot County, 107 Me. 345, 78 A. 454. The case must be a clear one that would justify a court in striking down a statute which has regulated the affairs of the citizens of a state for more than 40 years. No such case is presented.

The guaranty of the equal protection of the laws does not deny to a Legislature the right to classify along reasonable lines. From the earliest times, it has been recognized that the relations of a common carrier to the public, or to its employees, are properly the subject of special legislation. As early as 1786, Massachusetts imposed a fine upon the keeper of a bridge whose negligence resulted in the death of a traveler; this statute was amended in 1840 to include carriers of passengers. See Carey v. Berkshire R. Co., 1 Cush. (Mass.) 475, 48 Am. Dec. 616. Probably every state in the Union has legislation dealing with the negligence of carriers. As late as November 7, 1932, the Supreme Court of the United States sustained a statute creating a presumption of liability where damage is caused by a common carrier, against the attack of a denial of equal protection of the laws. The court said:

"In view of numerous decisions of this court sustaining legislative classifications for various purposes and declaring the principles upon which their constitutional validity depends, it does not require any discussion to show that the mere discrimination resulting from the application of the presumption created by section 7051 to appellant and other railroad companies and the failure of the state to prescribe the same or a like rule in similar actions against carriers by motor for hire or other litigants does not violate the equal protection clause of the Fourteenth Amendment. Appellant's contention to the contrary is without substance." Seaboard Air Line Railway Co. v. Watson, 53 S. Ct. 32, 34, 77 L. Ed. ——.

Given, then, the power to put the negligence of carriers into a separate category, it is still insisted that there is neither rhyme nor reason in placing a limit on the amount of recovery against them, and no such limit where another causes the death. The power to classify carries with it the power to establish different sets of rules applicable to the different classes; and it is not fatal that the particular rules within the set may result in some inequality when applied to specific instances. In Second Employers' Liability Case, 223 U. S. 1, 53, 32 S. Ct. 169, 176, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44, a statute was challenged which imposed an employer's liability upon interstate carriers by railroad, and not upon other interstate carriers. The statute was upheld, the court saying that the equal protection guaranty "does not take from Congress the power to classify, nor does it condemn exertions of that power merely because they occasion some inequalities. On the contrary, it admits of the exercise of a wide discretion, in classifying according to general, rather than minute, distinctions, and condemns what is done only when it is without any reasonable basis, and therefore is purely arbitrary."

To the same effect, see Louisville & Nashville R. Co. v. Melton, 218 U. S. 36, 30 S. Ct. 676, 54 L. Ed. 921, 47 L. R. A. (N. S.) 84; Mobile, J. & K. C. R. Co. v. Turnipseed, 219 U. S. 35, 31 S. Ct. 136, 55 L. Ed. 78, 32 L. R. A. (N. S.) 226, Ann. Cas. 1912A, 463; Chicago, B. & Quincy R. Co. v. McGuire, 219 U. S. 549, 31 S. Ct. 259, 55 L. Ed. 328.

There being no question as to the power of the Legislature to make the general classification, it is not necessary to seek a reason to support the particular clause of the statute under attack. Reasons therefor, however, immediately suggest themselves. The Legislature may well have considered that since a recovery of $5,000 was allowed, although the damage was nominal, it was only fair that the recovery be limited to $5,000 in event the damages exceeded that sum; that the quasi penal allowance made to insure carefulness should be offset by a reasonable maximum. Or, the Legislature may have fixed a maximum because of the danger of juries returning damages in fanciful amounts against carriers, a danger not considered to be present in actions against others. Or, the Legislature may have concluded that the tariffs, which the public must pay, might be seriously affected by extravagant verdicts against railroad companies. Other considerations suggest themselves, among them the quære as to the power of the Legislature to allow the common law to stand unmodified as to carriers, while adopting Lord Campbell's Act as to others; but these are enough. The statute limits the recovery against the plaintiff to such damages as are fair and just; its constitutional rights are

not violated because another section of the statute, dealing with another class, provides that a fixed sum shall be paid in case of negligent death. The demurrer to the amended petition was properly overruled.

 Error is also assigned on account of the admission in evidence of answers elicited from the witness Briggs on cross-examination. The circumstances are unusual. Appellant started to take the deposition of J. P. Briggs, alleged by the appellees to have been driving the car when the accident occurred, at Denver, Colorado. Briggs stated his name and address, that he was a defendant in the action but had not been served with summons, and that he knew Sue Vann. When asked if he remembered the accident, he fell into an uncontrollable rage. Thereupon counsel for appellant announced that he declined to use him as a witness, but stated that counsel for appellees could make him his own witness if he so desired. The further taking of the deposition was adjourned until afternoon. Counsel for appellees took over the witness, who in response to some mollifying questions, stated that he would answer questions propounded to him under certain conditions. Counsel for appellees, having tamed the witness, then requested counsel for appellant to proceed, which counsel for appellant again declined to do, as was his right. Whereupon counsel for appellees announced that he would proceed to cross-examine the witness. Counsel for appellant then interposed an objection to any cross-examination, on the ground that there had been no direct-examination upon which a cross-examination could be predicated, and formally objected to any questions on cross-examination which were not confined to the scope of the direct-examination. In the face of that objection, and still declining to make the witness his own, counsel for appellees proceeded to elicit from the witness all of the facts, concerning his employment, his instructions, and his duties. He described in detail his doings for the week prior to the accident. He described the car that he said he was driving on this particular trip. Many of the answers were in response to leading questions. Counsel for appellant did not further examine the witness. At the close of the deposition, counsel for appellees announced that while he believed he was within his right in treating the examination as cross-examination, in the event the court should rule otherwise, he would adopt the witness's testimony as his own. The appellees, as a part of their case in chief, offered this deposition.

The right of a party to offer in evidence the deposition of a witness taken by his adversary is well settled. Gordon v. Little, 8 Serg. & R. (Pa.) 533, 548, 11 Am. Dec. 632; Stewart v. Hood, 10 Ala. 600, 607; American Lumber & Mfg. Co. v. Berthold & Jennings L. Co. (C. C. A. 3) 233 F. 971; Chicago College of Osteopathy v. Littlejohn, 234 Mich. 528, 208 N. W. 691; Wigmore on Evidence, §§ 912, 1389. By so doing, he makes the witness his own. Wigmore on Evidence, § 912; Western Union Tel. Co. v. Lovely, 29 Tex. Civ. App. 584, 69 S. W. 128; Galveston, H. & S. A. R. Co. v. Young & Webb (Tex. Civ. App.) 148 S. W. 1113; In re Smith, 34 Minn. 436, 26 N. W. 234. Where one party takes a deposition but does not offer it, he may impeach the witness if his adversary offers it. Wigmore on Evidence, § 913. But does this privilege make evidence admissible which was otherwise inadmissible? If appellant had offered the deposition, all the substance of the cross-examination must have been ruled out. Should the rulings be different because appellees offer it? Both at the time of the taking of the deposition, and when the deposition was read in court, appellant objected to all questions on cross-examination which did not relate to the subject-matter of the direct-examination. These objections were overruled. In this, there was error. It is the settled rule in the United States courts that the party who calls a witness has the right to restrict his cross-examination to the subjects of his direct-examination, and a violation of this right is reversible error. Farley v. Norfolk & W. R. Co. (C. C. A. 4) 14 F.(2d) 93, 97; Tucker v. United States (C. C. A. 8) 5 F.(2d) 818; Hill v. Wabash R. Co. (C. C. A. 8) 1 F.(2d) 626, 627; Heard v. United States (C. C. A. 8) 255 F. 829, 833; Hales v. Michigan Cent. R. Co. (C. C. A. 6) 200 F. 533; Resurrection Gold Min. Co. v. Fortune Gold Min. Co. (C. C. A. 8) 129 F. 668, 674; McKnight v. United States (C. C. A. 6) 122 F. 926; O'Connell v. Pennsylvania Co. (C. C. A. 6) 118 F. 989, 991.

The competency of witnesses, by federal statute, is to be determined by the laws of the state in which the court is held, 28 USCA § 631; under the Conformity Act (28 USCA § 724), state statutes prescribing rules of evidence, and decisions construing them, are followed by the federal courts; but as to general evidentiary rules, state decisions are not binding on the federal courts when opposed to rules settled by controlling decisions of the United States courts. Hocking Valley R. Co. v. New York Coal Co. (C. C.

A. 6) 217 F. 727; Chicago & N. W. R. Co. v. Kendall (C. C. A. 8) 167 F. 62, 16 Ann. Cas. 560; Union Pac. R. Co. v. Yates (C. C. A. 8) 79 F. 584, 40 L. R. A. 553; Pariso v. Towse (C. C. A. 2) 45 F.(2d) 962; Massachusetts Bonding & Ins. Co. v. Norwich Pharmacal Co. (C. C. A. 2) 18 F.(2d) 934; E. I. Du Pont de Nemours & Co. v. White (C. C. A. 3) 8 F.(2d) 5; but cf. Gilligan v. Levinson (C. C. A. 3) 61 F.(2d) 363; Island Development Co. v. McGeorge (C. C. A. 3) 26 F.(2d) 841. Opposed are, American Agricultural Chemical Co. v. Hogan (C. C. A. 1) 213 F. 416; Stewart v. Morris (C. C. A. 7) 89 F. 290; Standard Oil Co. v. Cates (C. C. A. 4) 28 F.(2d) 718; Franklin Sugar Refining Co. v. Luray Supply Co. (C. C. A. 4) 6 F.(2d) 218. The rule was long ago established in the Eighth Circuit, and since Judge Amidon's elaborate opinion in the Kendall Case, supra, it has been an established rule of practice in the states now comprising this circuit. Until there is an authoritative decision to the contrary, the established rule will be followed. The rule above stated is likewise the rule in the courts of New Mexico.

Appellees contend that this settled rule has no application, because, at the trial, the appellees made Briggs their own witness. If Briggs had been a witness for appellant at the trial, the cross-examination beyond the scope of the direct-examination would have been stopped. Appellees then could have examined Briggs as their own witness, restricted by the rules of direct-examination, and subject to the right of appellant to cross-examine. Counsel for appellees had the right, when the deposition was taken, to make Briggs his own witness. The witness was tendered him for that purpose. If he had done so, objection could have been made on the ground of leading questions, and counsel for appellant could have cross-examined with impunity. This is the normal and regular procedure in the taking of depositions when opposing counsel desires to inquire as to subjects not covered by the direct-examination— a procedure conforming to the rules applicable when testimony is taken in court, and preserving the rights of the adversary. Counsel for appellees, although invited to do so, declined to adopt the normal procedure. On the contrary, and over seasonable objection, he examined the witness on many vital matters not touched on in the direct-examination. In so doing, he asked leading questions of a witness obviously friendly to him in the afternoon; he avoided the risk attendant upon making Briggs his own witness;

and he effectively deprived appellant of the valuable right of a searching cross-examination. Even at the conclusion of the examination, counsel for appellees declined to make him his own witness, which would have afforded counsel for appellant the opportunity to cross-examine with safety, although he still would have been deprived of the right to object to leading questions.

It is suggested that the error, if there be one, is immaterial, because other witnesses testified to some of the same facts improperly elicited. Upon this cross-examination, the witness Briggs testified that "on this particular trip the car I was driving was mine." Who was driving the car, at the time of the accident, was the pivotal question of fact in the case. In a later deposition, given in a companion case, Briggs testified in detail that he was not driving the car. In the case at bar, the contrary impression was left in the course of this improper cross-examination. It is no answer to suggest that counsel for appellant, upon redirect-examination, might have explored the subject more fully. At the only time there was an opportunity for cross-examination, counsel for appellees insisted on treating Briggs as the witness of appellant, and reasserted the propriety of his improper cross-examination. Appellant had a right to avoid the dangers of a redirect-examination of his own witness, and stand upon the simple proposition that the cross-examination was beyond the scope of the direct-examination. In this case where liability is not at all clear, the jury should have the benefit of all the facts within the knowledge of Mr. Briggs, one of the two survivors of the accident. It has been deprived of that because counsel for appellees persisted in an improper cross-examination, and declined to make the witness his own while there was opportunity for appellant to cross-examine.

The object of a trial is to develop all of the facts. The object of direct, cross, and redirect examination, is to elicit all a witness knows. Both objects were defeated by the maneuvering that was here substituted for the usual and orderly procedure. No one person knew as much of the facts as Briggs. A cross-examination was deliberately pursued that violated the fundamental rules that govern. The cross-examiner artfully skated close to the pivotal question of who was driving the car and then dropped the subject. Counsel for appellant was put, by this improper examination, to the choice of exploring a subject on redirect-examination with an unfriendly witness he had called, or of standing upon a sound objection season-

ably made. An experienced trial lawyer would suspect that danger lurked in the invitation of his adversary to proceed. Appellant's counsel had a right to stand on his valid objection. True, he was warned that appellees might avail themselves of their right to offer the deposition as their own; but he had a right to assume that objections seasonably made would be ruled in accord with the law of evidence. When appellees offered the deposition, they offered it subject to valid objections to questions propounded. On this account, the causes must be reversed.

 There was also error in admitting, over objection, a voluntary statement of the witness, not made in response to any questions; this statement was admitted for the single purpose of acquainting the jury with the perturbed frame of mind of the witness, a proper ruling except for the fact that the statement dealt with his duties as agent and his condition at the time of the accident.

 The other errors assigned are not well taken. Several different acts of negligence were alleged, and the trial court properly charged the jury that if any one of the charges was established, and such negligence so established caused the accident, the plaintiffs should recover. The court was requested to charge the jury that there could be no recovery on account of the death of Mr. Stewart unless there was gross negligence. This charge was tendered upon the theory that Stewart was riding as a personal guest. The instruction given by the trial court was more favorable to the appellant, for the court charged that there could be a recovery on account of the death of Mr. Stewart only in event that Mr. Briggs was acting within the scope of his employment in taking Mr. Stewart on this trip. Whether there was any substantial evidence to sustain a finding that Mr. Stewart was being transported in the interest of the company is not before us. Appellant submitted several instructions to the general effect that if the jury found that the accident was the result of some other cause, the verdict must be for the defendant. The court was quite within its rights in declining to give these negative instructions. The ground was covered fully in the affirmative charge given, that unless the jury found that the proximate cause of the accident was one of the acts of negligence alleged, the verdict must be for the defendant.

The judgments are reversed and the causes remanded for a new trial.

Reversed and remanded.

COTTERAL, Circuit Judge (dissenting).

I concur in the opinion of the majority, except with regard to the deposition of Briggs, taken upon notice by the defendant. The objection thereto was, in substance, that the witness, after answering preliminary questions as to his name, residence, and such matters, declined to give further answers, later stated he might or might not answer questions, counsel for defendant then declined to interrogate him, and said that plaintiffs' counsel might examine him as his own witness, but said counsel declined the offer, and, after examining the witness at length on matters beyond the direct testimony, announced that, if the court should rule it was not cross-examination, he would make the witness his own.

The facts should be accurately noted. While counsel for defendant was examining the witness, the latter produced a letter from said counsel and became much inflamed because counsel had not replied to the answer of the witness and said he did not know whether he would testify and felt entitled to a reply in advance. (The letter of counsel apparently intimated the witness was drunk in the car when the accident occurred.) Said counsel stated that as the witness had declined to testify, he refused to use him as a witness for the time being, but plaintiffs' counsel might do that if he desired. The witness volunteered a denial that there was a drunken party in the car.

After an adjournment, defendant's counsel objected to that denial and moved to strike it. Some colloquy followed. The witness agreed to answer questions if written out and submitted. Plaintiffs' counsel then asked defendant's counsel to proceed with any questions desired, but the latter declined. Plaintiffs' counsel questioned the witness, as upon cross-examination, to which defendant's counsel objected. Counsel for plaintiffs stated in the record that he believed he was right in treating Briggs as defendant's witness, but, if the court should rule otherwise, he would adopt the testimony as his own. Defendant's counsel declined to ask any questions and to make Briggs its witness, as he had expressed an unwillingness to testify and refused to state whether he would do so. The witness then stated he would answer any and all questions counsel on either side desired to ask him.

At the trial, the deposition was read as part of plaintiffs' evidence. Concededly, the testimony extended beyond the scope of cross-

examination. As such, it was not admissible. But it was introduced by plaintiffs, and the objection thereupon became untenable on that ground. It is true plaintiffs' counsel had formally declined to make Briggs his witness, but this was qualified by an offer to do so, if required by the court. As a matter of law, it was indispensable to the reading of the deposition, and of this defendant was bound to take notice. The defendant knew that might well happen, and could not have been misled. The majority opinion is undoubtedly erroneous in holding that plaintiffs effectually declined to make Briggs their witness. It is asked, Should the rulings be different because plaintiffs offered the testimony? They certainly should be. When the testimony developed to be adverse, defendant's counsel evidently preferred to stand on the technical objection that the testimony was not cross-examination. But it lost that character when it was offered by the plaintiffs. The defendant took that risk in its election. There is no force in the contention that plaintiffs obtained an advantage in asking leading questions to the witness. Those matters are not raised on the appeal.

The defendant also relies upon the theory that, as the witness had once, in ill temper, declined to testify, that declination could not be withdrawn. Ample opportunity was finally given counsel to examine the witness, and he refused to avail himself of it. He could not stand on the previous attitude of the witness. By refusing to examine him when eventually permitted to do so, he waived the privilege.

A deposition is only a means of eliciting testimony for use in court. It is admitted either party might read a deposition taken by one of them. Hence the plaintiffs were within their rights in reading the testimony. It was only the absence of the privilege of cross-examination that could reject the testimony. That privilege was waived.

The majority opinion does not deal with appellant's motions to remand the case and grant a new trial, which were submitted upon affidavits and exhibits at the hearing before this court. The motions are not well taken, both because the relief sought is not within the power of this court to grant and the grounds urged are without merit. But a more detailed statement and a discussion of the grounds of the motions would be useless, as the court decided to grant a new trial for a different reason.

In my opinion, the judgments should be affirmed.

### On Petition for Rehearing.

**PER CURIAM.**

Appellees vigorously insist, in their petition for rehearing, that any error in the cross-examination of Briggs is harmless, because another witness testified as to his duties, without contradiction.

If that had been all to which Briggs testified, the point would be well taken. A reading of the record left the impression with a majority of this court that Briggs admitted that he was driving the car at the time of the accident. One such statement of Briggs was pointed out in the opinion; there are other similar statements in the record. If members of this court gained that impression from a reading of the record, members of the jury doubtless gathered the same impression from a reading of the deposition.

Counsel assures us that he did not intentionally elicit these answers from the witness, as he desired to stay away from that pivotal point. We accept his statement. The fact remains that the answers were made in the course of a cross-examination that was in direct violation of the rules of evidence. Intentionally or not, counsel availed himself of the benefit of such testimony.

We have no quarrel with the contention, ably presented, that the cross-examiner may offer the whole of a deposition, or the cross-examination, if the proponent of the witness does not. We differ with his contention that a cross-examination, improper at the time, and inadmissible if the proponent offers the deposition, is proper and admissible if, perchance, the cross-examiner offers it first. If this contention is sound, then a cross-examiner need pay no heed to the rules of evidence when a deposition is taken, for any transgression may be cured by the simple device of offering the deposition as his own.

The petition for rehearing is denied.

COTTERAL, Circuit Judge, dissents.